State, ex rel. McNerney, v. Armstrong.

---

STATE, EX REL. JAMES C. MCNERNEY, APPELLANT, V. ALVIN H. ARMSTRONG ET AL., APPELLEES.

FILED DECEMBER 4, 1914.   No. 17,864.

1. **Municipal Corporations: AREAS IN SIDEWALKS: DISCRETION OF COUNCIL.** Under the statutes governing cities of the first class having more than 40,000 and less than 100,000 inhabitants, the matter of allowing and regulating entrances to basements through sidewalks is within the reasonable discretion of the mayor and council.

2. ———: ORDINANCE: CONSTRUCTION: AREAS IN SIDEWALKS. The sections of the sidewalk ordinance of the city of Lincoln quoted in the opinion cannot be construed to prohibit all openings in the sidewalk for stairways, and basement ways, in view of the statute·

requiring the mayor and council to regulate such openings, and the practical construction of those provisions for many years.

3. ———: Areas in Sidewalks: Discretion. Under the circumstances in this case, indicated in the opinion, permitting the construction and use of the stairway in question was not an abuse of discretion.

4. ———: ———: ———. Although such stairway somewhat restricts the free and unembarrassed use of the sidewalk for pedestrians, such use may be justified on the ground that the general interest is served by making available valuable property, increasing business facilities, and encouraging improvement.

5. ———: ———: Authorization by Resolution. Such permission may be given informally by resolution and without a formal ordinance.

Appeal from the district court for Lancaster county: P. James Cosgrave, Judge. *Affirmed.*

*James C. McNerney,* for appellant.

*Fred C. Foster, D. H. McClenahan, F. M. Hall* and *Meier & Meier,* contra.

Sedgwick, J.

In August, 1910, the First National Bank of Lincoln asked the mayor and city council for "a permit for the erection of the new First National Bank building, to be located at the southeast corner of Tenth and O streets, Lincoln, Nebraska." It was stated in the application that "the drawings call for an areaway, same being forty-five feet long by five feet wide in the clear. This areaway would be located twenty-five feet from alley line on the Tenth street side of the building." The permit was granted as requested and the building was erected. It was understood that this areaway was for the purpose of constructing a stairway to the basement of the building. Afterwards the relator began this action in the district court for Lancaster county against these defendants, who are the mayor and council of the city of Lincoln, to compel them to cause the "open areaway in the public sidewalk in Tenth street, adjacent to the west line of lot 12, in block

55 of the original plat of the city of Lincoln, to be closed, the iron fence and the concrete footing upon which the same stands on the public sidewalk inclosing the side and end of said open areaway to be removed, and each and every part of the public sidewalk space adjoining the said west line of aforesaid lot 12 to be made safe and unobstructed for public travel thereon." The district court found the issues in favor of the respondents and dismissed the proceedings. The relator has appealed.

Section 4475, Rev. St. 1913, provides: "The mayor and council shall have supervision and control of all public ways and public grounds within the city, and shall require the same to be kept open, in repair and free from nuisances."

Section 4418 gives the city authorities power "to remove all obstructions from the sidewalk, curbstones, gutters and cross-walks at the expense of the owners or occupants of the grounds fronting thereon, or at the expense of the person placing the same there; and to regulate the buildings of bulkheads, cellars and basement-ways, stairways, railways, windows and doorways, awnings, hitching posts and rails, lamp posts, awning posts, and all other structures upon or over adjoining excavations through or under the sidewalks of the city."

The sidewalk ordinance of the city of Lincoln provides:

"Section 1. Hereafter there shall be reserved on each side of every street in the city of Lincoln, for sidewalks and for the cultivation of trees and grass, a space equal to one-fourth of the street from abutting lot lines: Provided, that on streets in paving districts, said space shall extend from the lot line to the curb line.

"Section 2. All sidewalks * * * in front and alongside of any building in any part of the city where areaways or cellars are in use under any sidewalk, and also in front of any lot used for any business purpose shall extend from the line of the abutting lot to the curb line.

"Section 3. Sidewalks on business streets or portions thereof shall be constructed so as to incline upwards from the outer edge of the sidewalk toward the building or

boundary of the lot at the rate of not less than one inch nor more than one and one-fourth inches in three feet; the outer edge of said walk to rest on the top of the curb; and no part of said walk shall be taken for private use by lowering or cutting down the same next to the building; and said walk shall be built up to the. building on a. uniform grade."

"Section 7. No person shall be allowed to keep or use for vaults, areas, or other purposes, the space beneath the sidewalk included within the sidewalk lines of any street in this city, unless a permit therefor shall have been obtained from the city council; such permits, heretofore granted or hereafter to be granted, shall continue, or to be issued, only upon condition that the party receiving the same shall, as a consideration for such use and such privilege granted, build, maintain, and keep in repair a sidewalk over such space intended to be used for vaults, areas, or other purposes, and pay all damages that may be sustained by any person by reason of said sidewalk being in a defective or dangerous condition."

"Section 9. Areas about windows opening through the sidewalk immediately adjacent to the buildings to admit light and air to a basement, shall be protected and covered by strong iron grating, the bars of which shall not be more than one inch apart, and so constructed that the same may be walked upon with safety, and of sufficient strength to hold any weight that would come upon the walk at this point. In order to prevent accidents, all hatchways, coal holes, or openings of any sort through sidewalks shall be provided with strong iron or iron and glass coverings, with rough surface, and the entire construction of said areas, hatchways, entrances and opening shall be subject to the direction and supervision of the city engineer."

"Section 11. It shall be unlawful for any person, firm or corporation to leave open any opening in any sidewalk, or suffer the same to be left or kept open, or suffer any sidewalk in front of his or its premises to become or continue so broken or otherwise defective as to endanger life or limb."

The relator contends that these statutes and these ordinances require that there shall be no openings in the sidewalk, and that the city council has no power to allow such openings for stairways to the basements of buildings under any circumstances. The statute evidently leaves the matter with the city council. They are given express power to "remove all obstructions from the sidewalk, * * * and to regulate the building of bulkheads, cellars and basement-ways, stairways, * * * and all other structures upon or over adjoining excavations through or under" sidewalks. The power to "regulate" basement-ways, and stairways and excavations through sidewalks, of course, does not imply that such things are forbidden by statute; conferring such powers rather implies that, under some circumstances, such basement-ways, stairways, and cellars and excavations through sidewalks will be appropriate and necessary and ought to be regulated by ordinance.

In *City of Plattsmouth v. Nebraska Telephone Co.*, 80 Neb. 460, it was contended that a city or incorporated town had no power to grant a telephone company the use of its streets, alleys and public grounds, but the court held that such power existed, and in the opinion it was said: "That the city may order the removal of poles which endanger the citizens because of a rotten condition, and protect its inhabitants against any conduct of the business which endangers the public health or safety, is not a question open to dispute; but nothing of the kind appears in the record before us. As before stated, Main street is 100 feet in width. There is no evidence of a congested condition of the street or of any necessity from other causes for removing the defendant's poles."

The statute of Iowa requires the city authorities to keep the streets open and free from nuisances, and does not expressly authorize areaways and stairways through sidewalks, but the supreme court of that state decided: "Areas for light, and basement windows, and descents are necessary, in order to carry on business in a city, and, if such excavations are properly guarded, * * * they do not, in themselves, constitute a nuisance." *Keyes v. City of Cedar*

*Falls,* 107 Ia. 509. In a later case that court has quoted with approval from the case last cited, and said: "In view of these expressions, the interpretation put on the statute for many years, and the universal use of the streets close to buildings for areas and cellar stairways, we are not ready to say that the power to permit them is not included in the sections of the code quoted." *Perry v. Castner,* 124 Ia. 386. These cases have been frequently cited with approval by decisions of that court. In *Jorgensen v. Squires,* 39 N. E. 373 (144 N. Y. 280) the court of appeals of New York decided: "A city authorized 'to regulate the use of sidewalks' (Consolidation Act 1882, sec. 86) may authorize the building by property owners of openings for cellarways in the sidewalk." In *Wendt v. Incorporated Town of Akron,* 142 N. W. (Ia.) 1024, it was decided: "Despite code, sec. 5078, declaring the obstructions to public streets to be nuisances, a municipal corporation may, under section 753, giving such corporations the care, supervision, and control of all public highways in the city, authorize an abutting owner to use the street for areaways and cellar stairways when it does not cause injury to others."

The relator relies upon *Chapman v. City of Lincoln,* 84 Neb. 534, in which it was held: "Whatever space in a public street of a city is set apart for the use of the public as a sidewalk, the public have a right to use in its entirety, free from any and all unauthorized obstructions, and it is the duty of the mayor and city council to see that it is kept in that condition." That was a correct statement of the law as applied to the facts in that case. An ordinance was enacted making it "unlawful for any person, persons or corporation to erect or maintain any booth, shed, stand or other obstruction upon the streets, sidewalks or sidewalk space of the city of Lincoln for the sale of fruit, books or other merchandise, or any article or thing of value, or to erect or maintain any shed or booth or stand thereon to be used for shining boots and shoes." Chapman sought to enjoin the enforcement of this ordinance, and this court affirmed the judgment of the district

court holding that it was within the discretion of the city authorities to prohibit such use of the sidewalks. The fact that the location involved was "on the opposite side of the same street and less than 100 feet" from the stairway in question here does not make that a case "similar in many respects to the case at bar." The plaintiff's tenants erected an "inclosed shed or booth" on the sidewalk in which they were "handling fruits, cigars, tobacco, and like subjects," and there was no doubt of the jurisdiction of the city authorities to enact and enforce an ordinance preventing such use of the sidewalk.

The question, then, is upon the construction of this sidewalk ordinance. As applied to the question before us, it must be conceded that the ordinance is not as clear and definite as might be desired. The evidence shows a practical construction of the ordinance by the city. It appears that there are many basements in the business part of the city with entrances by basement-ways through the sidewalk, and that for 40 years this bank has maintained a bank building, with basement and a basement-way through the sidewalk at this place which required a superficial opening in the sidewalk much larger than the one now in question. The word "area" has a somewhat elastic meaning. We find from Webster's New International Dictionary that it originally meant "a broad piece of level ground." In modern use it may mean: "(1) Any plane surface. * * * (2) The inclosed space on which a building stands. (3) The sunken space or court giving ingress and affording light to the basement of a building. (4) A particular extent of surface."

The word "areaways" in section 2 of the ordinance is plainly the equivalent of cellar or room under the sidewalk; such rooms must not interfere with the public use of the sidewalk. Section 7 requires that a permit shall be obtained before the space beneath the sidewalk shall be used for private purposes. The covering which constitutes the sidewalk over such rooms must be built and kept in repair by the owners of the rooms so used. By section 9 openings may be left around a window in a basement to

"admit light and air," and in such case such openings must be covered with an "iron grating," which will form a part of the sidewalk. The same section requires that "hatchways" and openings through the sidewalk "shall be provided with strong iron or iron and glass coverings." The relator construes this literally, and concludes that it prohibits "basement-ways and stairways" for entrances to basements. A hatchway is not a stairway or basement-way; hatch is a nautical term and generally signifies an opening in the deck of a ship. Webster. In view of the fact that basement-ways through the sidewalks have been in use in connection with at least 100 buildings in the business part of the city, and particularly at the place in question for more than 40 years, we cannot presume that it was intended by these various regulations, the purpose of which is plain, to change this policy and forbid all basement-ways through sidewalks, without specifically mentioning them. No section of this ordinance, as disclosed in this record, applies specifically to basement-ways or stairways. The rental value of this basement is $1,000 a year. The sidewalk at this place is 25 feet wide. O street is the principal business street of the city. The entrance to this stairway begins about 70 feet south from O street, and extends about 45 feet south. It is about 5 feet wide, and is surrounded on the west and south by an iron railing of "3-inch pipe," one top rail about 3 feet high, and another "between that and the ground about equal distance." The entrance is guarded by a similar railing on the north "out four or five or six feet from the entrance," so that one must enter from the west and then turn to the south to go down the stairway.

The matter of allowing and regulating entrances to basements through sidewalks is within the reasonable discretion of the city authorities. The evidence in this case does not show an abuse of discretion on the part of the mayor and council.

The judgment of the district court is

AFFIRMED.

FAWCETT, J., took no part.

State, ex rel. McNerney, v. Armstrong.

LETTON, J., concurring in conclusion only.

It is elementary that an ordinance of a permanent character cannot be amended by a mere resolution of a temporary nature. It seems clear to me, therefore, that the permit granted by the council attempted to allow a violation of the ordinance of June 10, 1910. While there are many open areaways in the city, there is no proof that any have been constructed since the ordinance went into effect. The ordinance changed the policy of the city and showed the intention of its authorities that no uncovered openings should be thereafter allowed in sidewalks within prescribed limits. The evidence shows that a number of like applications have been denied since it went into effect, and that the permit to the First National Bank is the only one that has been issued.

An areaway is not usually considered a nuisance *per se*. It is permitted by the statute. In the absence of this ordinance, the city authorities would have power to permit it by resolution. The fact that a much longer areaway had been used in connection with the old bank building on the lot for many years, no doubt, had much weight with the city council in passing the resolution; but in my judgment the council should have amended the ordinance if it desired to grant the permit.

The relator shows no special injury peculiar to himself independent of and different from that, if any, suffered by the public at large. No property right of his is affected, and there is ample space on the sidewalk at this point for public travel. The rule applies that one seeking a writ of mandamus to compel action by a public officer must show a special interest in the relief sought and a clear right to the writ, or it will not be granted.

I therefore concur in the conclusion.