## HAMMELL *v.* STATE OF INDIANA.

[No. 24,616.   Filed June 4, 1926.]

1. INDICTMENT AND AFFIDAVIT.—*Affidavit charging transportation of intoxicating liquor in language of statute was sufficient.*—An affidavit charging the offense of transporting intoxicating liquor in the language of the statute (Acts 1917 p. 15, §4, as amended Acts 1923 p. 70) was sufficient and, therefore, not subject to a motion to quash.   p. 46.

2. STATUTES.—*Words and phrases are to be given their plain ordinary meaning unless such construction would manifestly defeat the legislative intent.*—Under the provisions of §247 Burns 1926, §240 Burns 1914, words and phrases in a statute are to be given their plain ordinary meaning unless such construction would manifestly defeat the legislative intent. p. 48.

3. CRIMINAL LAW.—*Instruction defining "transportation" of intoxicating liquor was substantially correct.*—An instruction defining the transportation of intoxicating liquor as "moving, carrying or conveying from one place to another" was substantially correct, and, if a defendant desired the jury to be further instructed as to the meaning of such terms, it was necessary for him to tender an instruction defining the expressions used and request that it be given.   p. 49.

4. STATUTES.—Statutes in derogation of the common law are to be strictly construed.   p. 52.

5. INTOXICATING LIQUORS.—*"Transportation" of intoxicating liquor does not include moving it from one part of one's premises to another.*—The statute making it a criminal offense to "transport" intoxicating liquor is not applicable to a moving of such liquor from one part of accused's premises to another, the word "place" being defined as a portion of space marked off or separated from the rest by occupancy, use or character. p. 52.

6. INTOXICATING LIQUORS.—*Moving intoxicating liquor from one place to another on the same premises was not "transporting" intoxicating liquor within meaning of statute.*—Moving intoxicating liquor from an old dilapidated woodshed on the rear of a lot to accused's dwelling on the same lot and there hiding it was not "transporting" intoxicating liquor within the meaning of Acts 1923 p. 70, amending §4 of the Prohibition Law of 1917 (Acts 1917 p. 15) (Ewbank, J., dissenting). p. 52.

From Delaware Circuit Court; *Clarence W. Dearth,* Judge.

William ("Babe") Hammell was convicted of transporting intoxicating liquor, and he appeals. *Reversed.*

*Walterhouse & Miller,* for appellant.

*U. S. Lesh,* Attorney-General and *Ethan A. Miles,* for the State.

MYERS, J.—Appellant, in the court below, was tried by a jury and convicted of the charge of unlawfully transporting intoxicating liquor, in violation of §4, Acts 1917 p. 15, as amended, §1, Acts 1923 p. 70. Judgment in accordance with the verdict. The affidavit was in five counts. A motion to quash each of these counts was overruled. This ruling and the overruling of his motion for a new trial are assigned as errors.

We will give attention only to such questions as are material to the count of the affidavit upon which appellant was convicted. The affidavit in question charged the offense—"transport"—in the language of the statute and was not therefore subject to a motion to quash. *Davy* v. *State* (1924), 195 Ind. 74, 144 N. E. 532; *Smith* v. *State* (1924), 194 Ind. 624, 144 N. E. 141; *State* v. *Lewis* (1924), 195 Ind. 344, 145 N. E. 496; *Cyrus* v. *State* (1924), 195 Ind. 346, 145 N. E. 497; *Anderson* v. *State* (1924), 195 Ind. 329, 145 N. E. 311.

The causes relied on for a new trial are, that the court erred in giving on its own motion instructions

Nos. 9, 10 and 11; insufficient evidence to support the verdict; verdict contrary to law.

Appellant insists that each of the instructions mentioned, as applied to the evidence, is ambiguous, misleading, and tended to confuse the jury as to the meaning of the word "transport," as used in the act alleged to have been violated. Hence, each of the specifications in support of the motion for a new trial are made to depend upon the evidence. Looking to the evidence, police officers of Muncie testified that at about 3:30 in the morning of November 10, 1923, they searched appellant's home and found in glass jugs and pint bottles about thirteen gallons of white whisky concealed in the attic. The officers took charge of the whisky and, at the trial, the same was introduced in evidence. Appellant told the jury he had been a resident of Muncie for twelve or fourteen years, and that his family, at that time, consisted of himself, wife and six children at home; that he was a molder and coremaker and had worked at the Muncie Foundry for seven years, and at the Muncie Malleable Castings Company, where he was then working, for about seven years; that he had never made or transported any whisky; that one evening about 8 o'clock, prior to the search by the officers, he went out to an old woodshed on his lot about twenty-five or thirty feet from his house for kindling, and there discovered the liquor in this shed; that the shed was not fully enclosed as he had knocked some of the boards off of the south end intending to tear it down. When he saw the liquor, "I didn't hardly know what to do about it so I just took it and hid it." "There was a machine out there used in that new water line. I don't know whether this stuff came from there or not, but anyhow it was in the shed." He carried the liquor from the woodshed and concealed it in the attic himself. He had constructed a new garage in which he kept his

coal and his automobile. A portion of this garage was rented to another person for storing his Ford machine. His wife and children were in bed at the time. His wife testified that she did not know the liquor was in the house, and that she did washings. All of the evidence with reference to whether appellant possessed and hid the liquor is, in reality, immaterial, for the precise question is: Did appellant transport intoxicating liquor in violation of law?

As applicable to this evidence, the court instructed the jury, in substance, as follows: No. 9: That the offense charged in count 2 of the affidavit "is transportation of intoxicating liquor * * * and if the evidence shows beyond all reasonable doubt that the defendant transported intoxicating liquor or moved any intoxicating liquors from one place to another, then you should find the defendant guilty." No. 10 told the jury that the "word 'transport' means, as used in this statute, to carry over or across, to convey from one place to another, or to remove from one place to another." No. 11 told the jury that on November 10, 1923, the mere possession of intoxicating liquor was not unlawful, but if the defendant moved or carried or conveyed intoxicating liquor from one place to another, then he was guilty of transporting liquor.

The legislature has not attempted to define the word "transport," nor does it appear that it was used in any particular or technical sense. Under such circumstances, it would seem that the general rule, requiring words and phrases of a statute to be taken and given their plain, ordinary and usual meaning, should control, unless such construction will defeat the manifest intent of the legislature. §247 Burns 1926, §240 Burns 1914; *Booth* v. *State* (1913), 179 Ind. 405, 100 N. E. 563, L. R. A. 1915B 420, Ann. Cas.

1915D 987; *Boyer* v. *State* (1908), 169 Ind. 691, 83 N. E. 350.

This court has applied the foregoing general rule of statutory construction to the word in question, and given it its ordinary meaning—"to carry or convey from one place to another." *Asher* v. *State* (1924), 194 Ind. 553, 142 N. E. 407; *Berry* v. *State* (1925), 196 Ind. 258, 148 N. E. 143; *Eiler* v. *State* (1925), 196 Ind. 562, 149 N. E. 62.

For the purposes of the cases last cited, the definition thus adopted was sufficient, for in each case, the alleged transportation was either upon a public thoroughfare or from one separate and distinct occupancy to the separate and distinct premises of another. The evidence in the instant case merely shows that appellant removed the liquor from his woodshed, a distance of twenty-five or thirty feet to his house, or from one spot to another on his own premises, and not to or from the premises or occupancy of another.

Appellant insists that under this evidence, the jury should have been instructed as to the meaning of the phrase "carry or convey from one place to another," or "to remove from one place to another." His claim in this respect, when analyzed, is that the above phrases used in the instructions were not explicit, or as full and complete as the evidence would warrant. If it may be said that appellant was entitled to an instruction defining these phrases, his remedy was, at the proper time, to tender to and request the court to give one to that effect. He did not do so, and, as we construe the instructions given, they were substantially correct and hence he is not in a position to successfully except to them. *Flatters* v. *State* (1920), 189 Ind. 287, 127 N. E. 5; *Jeffries* v. *State*

Vol. 198—4

(1925), 195 Ind. 649, 146 N. E. 753; *Bohan* v. *State* (1923), 194 Ind. 227, 141 N. E. 323.

On the point of sufficient evidence to support the verdict, we have already recited all of it most favorable to the state. It will thus be observed that the only evidence relative to transportation of liquor was that given by appellant himself. True, some one placed the liquor in appellant's woodshed, but there is no evidence that he placed it there or that he knew who did. We may infer from his reference to a machine that such an instrument was in the alley near his woodshed, and was used in connection with a new water line. There was no attempt to more fully develop that phase of his testimony. The word "machine" is exceedingly comprehensive, but its use in connection with a new water line would readily suggest a machine for tapping or calking a water line, or for use in digging or filling a ditch. The purposed use of the machine is not suggestive of an automobile or other instrumentality in use for conveying persons or property, and his statement "whether this stuff came from there or not" may as well have reference to the new water line as the machine. However, if it be conceded that the witness used the word "machine" as meaning an automobile, then we would have the witness saying, "there was an automobile out there used in that new water line." By omitting the asserted use of the machine or automobile, and assuming that the witness merely said, "There was a machine out there," might reasonably lead to an inference not at all justifiable when all of his testimony in that connection is considered.

Courts ought not to garble the statement of a witness in order to give it an inference plainly not intended by him. The evidence shows an old woodshed partly torn down, accessible to alley travelers and containing

a quantity of whisky which appellant carried to and hid in his house, but there is no evidence whatever connecting him with any person theretofore in possession of this liquor. Whether the testimony of appellant be considered separately or the evidence as an entirety, the inference would not fairly follow that when appellant removed the liquor from his woodshed over twenty-five or thirty feet of his premises to his dwelling, he thereby, as a matter of law, assisted in its transportation. We may account for the verdict only upon the theory of an exceedingly restricted meaning of the word "transport." We thus meet the question— Is the verdict supported by sufficient evidence within the usual accepted meaning of the word "transport?"

The word "transport" is a derivative of the Latin word "transportare"—to carry over or across. Century Dictionary. To carry across, beyond. Universal Encyclopedia. To convey over, across. Stormonth's Dictionary. To carry across, through. Imperial Dictionary. However, the word "transport" is defined by Webster, to carry or convey from one place to another. It will be noticed that this court has heretofore used the Webster definition as expressing the meaning of the word "transport," as used in the statute defining the offense here charged. We have been unable to find a single authority approving a definition of the word "transport," as here used by the legislature, which would include the changing, moving or transferring of any item of personalty on a particular described area or tract of land by one in possession thereof, nor might we expect to find such a definition when the leading words in the phrase "from one place to another" are considered in the light of their well-understood meaning.

The word "place" is defined as "an area or portion

of land marked off or regarded as marked off or separated from the rest, as by occupancy, use or character"; and the word "another"—different; distinct. Century Dictionary. "Place"—a portion of space regarded as separate from the rest of space; "Another"—not the same, different. Imperial Dictionary. "Place"—space occupied by or belonging to a thing under consideration; space regarded as abode or quarters. "Another" —not the same; distinct; different. Standard Dictionary. "Place"—any portion of space regarded as measured off or distinct from all other space or as appropriated to some definite object or use. "Another"— one more, in addition to a former number; a second or additional one; not the same; different. Webster's Dictionary.

Keeping in mind the foregoing definitions, and that statutes in derogation of the common law must be strictly construed, that is to say, by refusing to 4-6. hold those not clearly brought within their scope, and by refusing to discharge those who, but for refined distinctions or forced constructions, are plainly within their design (*State* v. *Goodwin* [1907], 169 Ind. 265), we are not prepared to say that the evidence in this case, which merely shows that appellant carried the liquor from his old partly dismantled woodshed into his dwelling, although he undertook to hide it there, is sufficient to bring him within the expressed legislative intention to make such act an offense. *Hill* v. *State* (1923), 96 Tex. Cr. App. 165, 256 S. W. 921. This conclusion compels a reversal of the judgment in this case.

Judgment reversed, with instructions that the court below sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

Ewbank, J., dissents with opinion.

### DISSENTING OPINION.

EWBANK, J.—As indicating what defendant meant and what the jury were justified in inferring he meant by his testimony that a "machine was out there" when he found the whisky in his woodshed, I call attention to the fact that defendant, after having testified that he had built a new garage, that he had an automobile and that he had kept it in there ever since the garage was built, further testified that he kept in the garage "nothing but the machine," and testified that after the officers had searched and found the liquor in his attic and had placed him under arrest, they "took the stuff out in one machine and took me in another." And the direct connection in which he referred to the "machine out there" was after stating that a door of the old woodshed opened into an alley which ran north and south past it, when he added that "I went out to the shed there—I got an old shed in the back part there and one end of it is knocked out, and this stuff was all in there, and those bottles were in a box, and they were in the shed. So I got in my coal and kindling, and I seen it setting there. There was a machine out there used in that new water line. I don't know whether this stuff came from there or not, but anyhow it was in this shed. So I didn't know hardly what to do about it, so I just took it and hid it." Under the rule that, in determining the sufficiency of the evidence to sustain the verdict, that interpretation of doubtful evidence must be accepted and that choice made as between two or more possible inferences which will support the verdict, rather than what would overthrow it, this testimony must be accepted as evidence given by the defendant himself that there was an automobile out in the alley when he found the liquor in his shed.

Defendant also testified that the door from the alley into his woodshed was not locked, that the south end

of the shed had been pulled down, that the police had searched his house several times before, but this whisky was not there then, and that he first discovered it in the woodshed at about 8 o'clock that evening. His thirteen year old daughter testified that she was living at home, and had stayed at home from the time she returned from school the previous day, but never had seen any intoxicating liquor there. And the police officers testified that with a search warrant they went to defendant's home the next morning at about 3 o'clock, and there found ten one-gallon glass jugs and fourteen pint bottles full of "white mule" whisky, and two other jugs partly full, all of which were concealed under a trap door in an attic that could be reached only by climbing up through a large, square hole in the ceiling of the pantry below; that the liquor was so well hidden in a box about six feet long, eighteen inches wide and ten inches deep, beneath a "false floor" of the attic, that the officers did not find it until they climbed to the attic a second time, when one of them stepped on the lath and the trap door tilted up from over the whisky. And defendant further testified that he carried the liquor from the woodshed to his house twenty-five or thirty feet away, and put it up in the attic, where the officers found it. The undisputed evidence was that there was no stairs leading to the attic, and that the only way to get up there was by climbing through the hole by which the police officers reached it. Defendant also testified, on cross-examination, that his house had been searched and intoxicating liquor found there, in the pocket of a man named Oist who was "convicted of violating the liquor law" on that account, a few months before this.

The foregoing amounted to some evidence, at least, that the night before the whisky was seized, it was brought to defendant's woodshed in an automobile

which defendant testified was out in the alley, and was placed in the unlocked shed, open to the alley, and that defendant immediately took possession of it and carried it to the attic, where he hid it in a place expressly prepared for its concealment. And from such evidence, the jury had a right to draw the inference that defendant was guilty of taking an active part in the transportation of the whisky from some point where it was loaded into that automobile to its hiding place in the box under a trapdoor in his attic, by way of the alley and the woodshed, and that his acts of "transportation" were not limited merely to carrying it from one place to another within the confines of his own home. In my opinion, the evidence is sufficient to sustain the verdict and the judgment should be affirmed. *Sager* v. *Commonwealth* (1922), 134 Va. 732, 114 S. E. 590; *Steinwich* v. *Commonwealth* (1923), 197 Ky. 262, 246 S. W. 795; *Scaggs* v. *Commonwealth* (1922), 196 Ky. 399, 244 S. W. 799; *Caudill* v. *Commonwealth* (1923), 200 Ky. 251, 254 S. W. 745; *Novotny* v. *State* (1923), 182 Wis. 304, 196 N. W. 232.

Therefore, I respectfully dissent from the opinion holding that it shall be reversed.