**People of the State of Illinois, Plaintiff-Appellee, v. John Oliver, Defendant-Appellant.**

**Gen. No. 11,177.**

Fourth District.
September 17, 1970.
Rehearing denied October 15, 1970.

Bruce I. Gordon, of Springfield, for appellant.

Richard A. Hollis, State's Attorney of Sangamon County, of Springfield (D. Bradley Blodgett, Assistant State's Attorney, of counsel), for appellee.

RICHARD MILLS, J., delivered the opinion of the court.

At approximately 4:00 a. m. one morning, the attendant at a service station in Springfield observed an automobile in the station area, saw the defendant get out of the car, proceed to open a vending machine at the sta-

tion, then empty the coin box into his right-hand coat pocket. The attendant noticed a female passenger in the automobile and also observed the license number of the car as the defendant drove away. He immediately called the police, reported the incident and gave a description of the automobile.

The desk sergeant instantly put out a call to all cars, and within a few minutes defendant's automobile was apprehended by the police several blocks from the service station. The police then ordered the defendant to drive his automobile to the downtown police station, preceded by one police car and followed by another. Officer Bryant was in the squad car behind and noticed defendant take his hands off the steering wheel and make movements to shove something under the front seat. The defendant's car was parked in front of the police station and he and his female companion, Carlene Rogers, were taken inside and searched. Oliver had $13.15 in change on his person, and the girl had over $30 in change in her purse.

During the booking process, Miss Rogers excused herself and was escorted to the ladies' room by a female attendant. After her charge utilized the facilities, the matron heard a noise in a wastepaper can near Miss Rogers that sounded like metal hitting against metal. Upon checking the trash container, the matron discovered a ring of keys, one of which it later developed would open the vending machine at the station in question.

Meanwhile, back on the street, also during the booking process, Officer Bryant took his flashlight and shined it through the window into the defendant's automobile. Sticking out from underneath the driver's seat was a portion of a gun barrel. He then opened the car door, and as he pulled the barrel of the pistol out from under the seat, a ring of keys also came out.

Oliver was subsequently indicted for possession of burglary tools and misdemeanor theft. A jury found him guilty on both counts, probation was denied and he was sentenced to the penitentiary for 1–2 years. The trial court had denied Oliver's motion for a new trial which was grounded essentially upon the five points relied upon in this appeal. We now proceed to consider in like order the errors urged.

Point One: Is a "vending machine" a "depository" within the animus of the Criminal Code? (Ill Rev Stats 1967, c 38, § 19–2). The pertinent statutory language reads as follows:

> "§ 19–2. Possession of Burglary Tools.) Whoever possesses any key, tool, instrument, device, or any explosive, suitable for use in breaking into a building, housetrailer, watercraft, aircraft, motor vehicle as defined in the Illinois Motor Vehicle Law, approved July 11, 1957, as amended, railroad car, *or any depository designed for the safekeeping of property,* or any part thereof, with intent to enter any such place and with intent to commit therein a felony or theft shall be imprisoned in the penitentiary from one to 2 years." (The salient phrase has been emphasized.)

Oliver argues that we are impaled on the horns of a dilemma: since the General Assembly failed to specifically include vending machines among the classes of objects protected by that section, the "plain meaning" excludes vending machines; on the other hand, if we try to include vending machines under "depository," we are also effectively throttled because a penal statute must be construed strictly in favor of the accused, and such attempted inclusion would traverse the literal meaning of "depository," which is a place for the keeping of a "deposit," which in turn is a "naked bailment of goods to

87

be kept for the depositor without reward." Black's Law Dictionary, Revised Fourth Edition (1968), pp 526–528.

Let us dispose of the left horn first: The sine qua non of defendant's argument is that since "vending machines" were well known to the General Assembly at the time of enactment and not specifically included within the protected classes of section 19–2, the doctrine expressio unius est exclusio alterius applies. Mr. Oliver is mistaken. The doctrine that applies is expressio eorum quae tacite insunt nihil operatur.

■ ■ The other horn: Defendant cites People v. Kirkrand, 397 Ill 588, 74 NE2d 813, for the authority that a criminal statute must be construed strictly in favor of the accused. We find no quarrel with this maxim, but point out that Kirkrand continues to say: "The object, however, in construing criminal and penal, as well as all other statutes, is to ascertain the legislative intent. The rules as to strict or literal construction are of value only as assisting in finding the real meaning of the statute." (P 815.) As for the "bailment" argument, we view it as void of virtue. The popular definition of "depository" is "a place where anything is lodged for safekeeping." Webster's Dictionary, Unabridged, Second Edition. Ergo, a reading of section 19–2 in such context makes it beyond dispute that the legislature intended a vending machine be included in the protected miscellany class. It would seem both a travesty on common sense and a prostitution of logic to hold otherwise.

Furthermore, we conclude that this question has been laid to rest by the Illinois Supreme Court in People v. Weaver, 41 Ill2d 434, 243 NE2d 245. There, Weaver was prosecuted for this same offense based upon possession of a key that fit the vending machine burglarized. After reciting the visceral portions of section 19–2, the court concluded:

"Again we find that the State's evidence was sufficient to justify the jury in concluding that all elements of the statutory offense had been established beyond a reasonable doubt. A key had been used to open the door of the vending machine at which the defendant was standing. A key that opened the door of that machine was found in the police car where the defendant had been squirming to the extent of putting one foot on the dashboard. The proof went further, and established that a bag of keys suitable for similar purposes was found in the car in which the defendant rode to the laundromat."

██ Although the exact issue of whether a vending machine is a depository designed for the safekeeping of property was not raised on review in Weaver, by the affirmance of the jury conviction therein and the above finding that all elements of the statutory offense were proved leads us to the inescapable conclusion that possession of keys designed for introgression of vending machines with intent to enter and commit therein a theft does constitute the crime of possession of burglary tools.

██ ██ Point Two: He argues that the search of his automobile occurred without a warrant and without his consent at the very moment that he was being booked in the station, and that the gun and keys there seized should have been suppressed. Under the facts herein, this is a totally hollow argument. The question of illegal search is not even remotely involved here, since the uncontroverted evidence was that a portion of the gun barrel was in plain view. "It is well-settled law that observation of that which is open to view does not constitute a search, so that seizure of articles in plain view cannot be considered unreasonable." People v. Tate, 38 Ill2d 184, 230 NE2d 697, 698. And in People v. Elmore, 28 Ill2d 263, 192 NE2d 219, 220, it was held that where evidence was visible through the car windows, no search

was involved, because no search was necessary, since "A search implies a prying into hidden places for that which is concealed and it is not a search to observe that which is open to view." There was no error here.

■ Point Three: Oliver attacks the chain of evidence and continuity of possession of the ring of keys found in his automobile and the keys found in the washroom waste can. The challenge falls. An examination of the record reflects that Officer Bryant positively identified both sets of keys as those taken that night from Oliver's car and from the restroom trash can. Furthermore, cross-examination by Oliver's counsel failed to impeach the testimony—in fact, it reinforced the positive identification by Officer Bryant of both exhibits. There was no error whatever in admitting these exhibits into evidence. People v. Fisher, 340 Ill 216, 236, 237, 172 NE 743; People v. Dilworth, 67 Ill App2d 384, 214 NE2d 9, 12.

■ ■ Point Four: Defendant assails his conviction on the ground that exclusive possession of burglary tools must be established, that the only key capable of opening the subject vending machine was on the key ring found in the ladies' restroom, and that the instruction to the jury that possession by a coconspirator could be construed as possession by the defendant constituted reversible error. This position is untenable. The record is clear and reflects abundant grounds to resolve that Oliver and Miss Rogers were entangled in a joint misadventure, a common criminal affair. Illinois law is decisive in this regard, holding that "If the circumstances show a common design to engage in an unlawful transaction, whatever one does in furtherance of it is the act of the other." People v. Glass, 16 Ill2d 595, 158 NE2d 639, 641. Under the posture of the evidence, we can come to no other conclusion but that adequate possession of the key ring by Oliver was proved and the court's instruction to the jury was proper.

Point Five: Lastly, appellant questions the discretion exercised by the trial judge in refusing to declare a mistrial during the voir dire examination. We are at a loss to know exactly what transpired during the voir dire, since no record was made of that portion of the trial. The problem apparently centered around a single venireman, who asked to have the statement of the case read back to him, then said that he had read newspaper accounts of the case and that the defendant sounded to him like a "two-time loser." From what record we have, it was not until after the entire voir dire was concluded, and all twelve members of the jury selected, that counsel and the court went on the record outside the presence of the jury. The trial judge, in denying the motion for mistrial, said that he thought the juror meant that there were two counts in the indictment. We have no way of knowing at what juncture in the total voir dire the alleged remark took place, or whether other jurors even heard the remark, or what other questions were posed to other jurors regarding the effect of the remark, or what examination the court may have undertaken to ascertain the impartiality of the other jurors, or whether the court admonished the others to disregard the remarks. There appears of record no "bystanders bill," no stipulation between counsel as to what actually took place, no other matter of record which can assist us. In such a polemic vacuum, it would be sheer and pure surmise as to what really occurred, and without a record there is no way of knowing whether prejudice attached. The trial judge heard all that transpired in his courtroom, observed the veniremen, participated in the voir dire and was in a position to personally satisfy himself as to the impartiality of each juror. And one thing of record is certain: the prospective juror in question was excused. It is axiomatic that a declaration of mistrial lies within the sound discretion of the trial court, and unless error is clearly shown by the record,

such discretion will not be second-guessed by a reviewing court. There is no record, or acceptable substitute, here; consequently, there is nothing to second-guess.

The verdict of the jury in a criminal case will not be set aside on appeal unless that verdict is "palpably contrary to the weight of the evidence or so unsatisfactory as to justify a reasonable doubt of defendants' guilt." People v. Peto, 38 Ill2d 45, 230 NE2d 236, 238. Upon the tenor of all the evidence in this case, Oliver's guilt is persuasively demonstrated and we cannot entertain argument that any test for reversal has here been met.

The judgment below is affirmed.

Affirmed.

SMITH, P. J. and TRAPP, J., concur.