**STATE of Iowa, Appellee,**

v.

**James Clifford NEWMAN, Loren Robie Wilson, and Delbert Max Vanderpool, Appellants.**

**No. 64760.**

Supreme Court of Iowa.

Dec. 23, 1981.

Nicholas S. Krpan, Gerald R. Ralph and William L. Kutmus, Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., Julie F. Pottorff, Asst. Atty. Gen., and Dan L. Johnston, Polk County Atty., for appellee.

McCORMICK, Justice.

This is a consolidated appeal by defendants James Clifford Newman, Loren Robie Wilson, and Delbert Max Vanderpool from convictions and sentences for second-degree burglary under sections 713.1 and 713.3, The Code Supp. 1977. Although they urge two contentions, they preserved error on only one of them. They contend the trial court erred in overruling their motions to dismiss and for acquittal on the ground that the facts alleged do not constitute the offense. We affirm the trial court.

Defendants waived a jury, and the cases were jointly tried to the court. The State's evidence was presented by stipulation. It showed that Denny Hughes heard a drilling sound from a laundromat next door to his place of business in Des Moines. The laundromat was open to the public at the time. When Hughes went next door to investigate, he observed defendant Wilson drilling on the lock of a coin changing machine with an electric drill. Defendant Newman was nearby. When Hughes asked what they were doing, the two men said they were "fixing the machine." Defendant Vanderpool entered the premises and assured Hughes "everything was okay." Hughes returned to his place of business and asked his partner to call the police.

When the police arrived, defendants were fleeing from the scene. They were apprehended after a chase. They did not have permission to be drilling into the coin changer. It contained $200 at the time.

By motions to dismiss and for judgment of acquittal defendants alleged the facts did not constitute burglary. The trial court overruled their motions and, after submission of the case, found defendants guilty of the charge. Following sentencing, they appealed.

They seek reversal on two grounds. One is the alleged vagueness and overbreadth of section 713.1, and the other is the alleged error in overruling their motions to dismiss and for acquittal. They did not urge their constitutional ground by pretrial motion nor did they obtain a trial court ruling on it. Therefore they did not preserve error on that ground. *State v. Montgomery*, 243 N.W.2d 596, 597 (Iowa 1976); *State v. Ritchison*, 223 N.W.2d 207, 214 (Iowa 1974).

The only question presented under the record is whether breaking or entering a coin changing machine can constitute burglary under section 713.1.

The legislature may define crimes as it wishes subject to constitutional constraints. In defining burglary, section 713.1 provides:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure or area enclosed in such a manner as to provide a place for the keeping of valuable property secure from theft or criminal mischief, such occupied structure or place not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure or other place where anything of value is kept, commits burglary.

No dispute exists here concerning defendants' intent to commit a theft. Nor is there any dispute that they broke or entered the coin changer. The only controversy is whether the coin changer is either an "occupied structure" or "enclosed area" within the meaning of the statute.

■ Our objective is to ascertain legislative intent. We must look to the object to be accomplished, the evils and mischief sought to be remedied, or the purpose to be subserved, and place on the statute a reasonable construction to accomplish the evident legislative intent. *State v. Johnson*, 216 N.W.2d 335, 337 (Iowa 1974). Because the statute is penal, the rule of strict construction comes into play in doubtful cases. *State v. Welton*, 300 N.W.2d 157, 160 (Iowa 1981). However, the rule of strict construction is not to be used to inject doubt when legislative intent is evident through a reasonable construction of the statute. *State v. Lindsey*, 165 N.W.2d 807, 810 (Iowa 1969).

We have recognized that section 713.1 defines three alternative offenses:

> They have two elements in common. The common elements are the requisite intent and the absence of authority. The requisite intent is "the intent to commit a felony, assault or theft [in the place involved]." *Id.* The requisite absence of authority is "no right, license or privilege" to do the act involved. *Id.* When those elements exist, a person is guilty of burglary who (1) "enters an occupied structure or area enclosed in such a manner as to provide a place for the keeping of valuable property secure from theft or criminal mischief, such occupied structure or place not being open to the public," or (2) "who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired," or (3) "who breaks an occupied structure or other place where anything of value is kept . . . ." *Id.*

*State v. Sangster*, 299 N.W.2d 661, 662–63 (Iowa 1980). Because these definitions are alternative, they are independent and disjunctive. They are not dependent or conjunctive.

The section uses two terms in describing property in which burglary may occur: an "occupied structure" and an "area enclosed." An "occupied structure" is separately defined, but an "area enclosed" is not. *See* § 702.12. We assume, without deciding, that the coin changer was not an occupied structure under the statutory definition.

A coin changer is nevertheless covered by the statute if it is in an "area enclosed in such manner as to provide a place for the keeping of valuable property secure from theft or criminal mischief." It seems self evident that a coin changing machine is such a place.

Because these words are not technical and do not have a peculiar and appropriate meaning in law, we must construe them "according to the context and the approved usage of the language." § 4.1(2). In common usage, "area" includes "any specific extent of space or surface." *Webster's Third New International Dictionary* 115 (1976). A sealed and locked coin changer has four walls, a top and bottom. The secure exterior of the machine surrounds a mathematically quantifiable volume. It is thus an enclosed area under the plain language of the statute.

This conclusion is consistent with evident legislative intent. The statute is substantially broader than common law burglary and supplants a number of prior statutory offenses. *See* 4 J. Yeager and R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 293 (1979). The gist of the present offense is a trespass against a secure place with the requisite intent. The trespass element distinguishes the offense from theft, and the intent element distinguishes it from criminal mischief. The ordinary meaning of enclosed area and this distinction are reflected in II *Iowa Uniform Jury Instructions* No. 1313 (1978):

> An "enclosed area" is one which is so designed, built or enclosed that it is secure for the keeping of valuable property, and it reasonably appears the area was meant to be secure from theft or criminal mischief. An "enclosed area" need not be a structure or building.

Defendants assert, however, that a coin changer cannot be the subject of burglary because it is not large enough to hold a person. It is true that one of the alternative burglary offenses is committed by remaining in a place after it is closed or after expiration of the right to be there. Although size is not an element of the crime, the place would have to be large enough to hold a person for the offense to occur under that alternative. Nonetheless that is simply one way in which burglary may be committed. It is not the only one. When the legislature also made it burglary to break or enter "a place for the keeping of valuable property secure from theft or criminal mischief," it defined a place of a different kind. The size of the place is not a limitation in that situation.

Although statutory language differs, courts in other jurisdictions have recognized that similar places can be the subject of burglary. *See State v. Wilson*, 7 Ariz.App. 384, 439 P.2d 831 (1968) (a vending machine is an "other place of safekeeping for money, goods or other property" under a statute proscribing possession of burglary tools); *Estevez v. State*, 189 So.2d 830 (Fla.Ct.App. 1966) (a soft drink machine is a "safe or other depository" within a statute proscribing possession of burglary tools); *People v. Oliver*, 129 Ill.App.2d 83, 262 N.E.2d 597 (1970) (a vending machine is a "depository designed for the safekeeping of property" under a statute proscribing possession of burglary tools—rule of strict construction recognized); *Shumate v. Commonwealth*, 433 S.W.2d 340 (Ky.1968), *cert. denied*, 394 U.S. 993, 89 S.Ct. 1485, 22 L.Ed.2d 769 (1969) (a soft drink vending machine is a "storehouse" or "warehouse" within offense of storehouse breaking); *Commonwealth v. Marganon*, 370 S.W.2d 821 (Ky.1963) (a vending machine outside a building is a "place" where goods, wares or merchandise is kept under a statute proscribing possession of burglary tools); *State v. Stoner*, 473 S.W.2d 363 (Mo.1971) (a coin box of a pay telephone is a "safe" under a statute prohibiting possession of tools for breaking into a safe); *Annot.*, 45 A.L.R.3d 1286 (1972).

We hold that breaking or entering a coin changing machine can constitute burglary under section 713.1. Therefore the trial court did not err in overruling defendants' motions to dismiss and for judgment of acquittal.

AFFIRMED.

All Justices concur except REYNOLDSON, C. J., and UHLENHOPP, McGIVERIN and LARSON, JJ., who dissent.

UHLENHOPP, Justice (dissenting).

I think defendants' conduct does not come within section 713.1 of the Code. That section provides:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an *occupied structure* or *area enclosed* in such a manner as to provide a *place* for the keeping of valuable property secure from theft or criminal mischief, such *occupied structure* or *place* not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an *occupied structure* or other *place* where anything of value is kept, commits burglary.

(Emphasis added.)

The section initially uses two terms in describing property which may constitute the subject of burglary: an "occupied structure" and an "area enclosed." What do those two terms encompass?

An occupied structure is defined thus in section 702.12:

> An "*occupied structure*" is any building, structure, land, water or air vehicle, or similar place adapted for overnight accommodation of persons or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value. Such a structure is an "occupied structure" whether or not a person is actually present.

Keeping in mind that criminal statutes are strictly construed, *State v. Welton*, 300 N.W.2d 157, 160 (Iowa 1981), with doubts resolved in favor of the accused, *State v. Lawr*, 263 N.W.2d 747, 750 (Iowa 1978), a money changer can hardly be considered an "occupied structure" within the statutory definition of that term. It is neither a "building," a "structure," a "land, water or air vehicle," or a "similar place." Those are the only *kinds* of property the occupied structure section encompasses. The latter part of the first sentence of the section merely relates to the *use* which is made of those kinds of property—for "overnight accommodation of persons," or for "the purpose of carrying on business or other activity therein," or for "the storage or safekeeping of anything of value."

The other expression in the burglary section, "area enclosed," does not appear to be statutorily defined. The "area" must be enclosed in such a manner as to provide a place for the keeping of valuable property secure from theft or criminal mischief. At three points the section speaks of the area as a "place": "enclosed in such manner as to provide a *place*," "such occupied structure or *place* not being open to the public," and "breaks an occupied structure or other *place*." (Emphasis added.) The word "place" in the section obviously refers to the "area enclosed" which is named at the beginning.

As to the meaning of area enclosed, the word "area" does not convey the impression of an object, such as a money changer. Area is defined thus in *Black's Law Dictionary* 136 (4th ed. 1968):

A surface, a territory, a region. *Fleming v. Farmers Peanut Co.*, C.C.A.Ga., 128 F.2d 404, 406. Any plane surface, also the enclosed space on which a building stands, the sunken space or court giving ingress and affording light to the basement of a building, a particular extent of surface. *State v. Armstrong*, 97 Neb. 343, 149 N.W. 786, 788, Ann.Cas. 1917A, 554. An inclosed yard or opening in a house; an open place adjoining a house. 1 Chit.Pr. 176. The site of a house; a site

for building; the space where a house has stood. The ground on which a house is built, and which remains after the house is removed. Brissonius; Calvin.

Webster's definition of "area" likewise does not give the impression of an object: "a level piece of ground," "areaway." *Webster's New Collegiate Dictionary* 60 (1976).

Similarly, the word "place" does not convey the impression of an object, even disregarding the antecedent "area enclosed." Black defines place thus:

This word is a very indefinite term. It is applied to any locality, limited by boundaries, however large or however small. It may be used to designate a country, state, county, town, or a very small portion of a town. The extent of the locality designated by it must generally be determined by the connection in which it is used. *Robinson v. State*, 143 Miss. 247, 108 So. 903, 905; *Hammell v. State*, 198 Ind. 45, 152 N.E. 161, 163; *State v. Cahalan*, 204 Iowa 410, 214 N.W. 612, 613. In its primary and most general sense means locality, situation, or site, and it is also used to designate an occupied situation or building. *Burns v. McDaniel*, 104 Fla. 526, 140 So. 314, 316.

*Black's, supra*, at 1307.

Webster's definition of place is long. Illustrative of the relevant items are "an indefinite region or expanse: area," or "a building or locality used for a special purpose." *Webster's, supra*, at 876. None of the items in the Webster definition refers to objects as distinguished from locales.

At common law,

burglary required a breaking and entry into the dwelling house or mansion house of another, and all outhouses within the curtilage were protected, since they were held to be parts or parcel of the dwelling house. An exception to this general rule held that breaking into a church constituted burglary; this was said to be justified on the ground that the church is the habitation of God.

13 Am.Jur.2d *Burglary* § 3, at 320 (1968); *see also* 12A C.J.S. *Burglary* § 27 (1980).

Thus the language of section 713.1 does not appear to encompass a thing or an object, such as a money changer. This conclusion is supported by two additional parts in the section. First, the section applies to a person who enters an "occupied structure or place not being open to the public, *or who remains therein*. . . ." (Emphasis added.) Manifestly a person cannot remain in a money changer. Second, the section continues, "after the person's right, license or privilege *to be there* has expired. . . ." (Emphasis added.) The expression, to be *there*, can hardly have reference to an object, such as a money changer. The two expressions "remains therein" and "to be there" immediately follow "occupied structure or place" and plainly refer to both of those subjects. (As already noted, the antecedent of "place" throughout the section is the "area enclosed.")

Decisions from other jurisdictions are distinguishable on the basis of the language of their statutes. In 1963 the Kentucky Court of Appeals applied the following statute in *Commonwealth v. Marganon,* 370 S.W.2d 821 (Ky.1963):

> Any person who has possession of any tools, implements or other things used by burglars for housebreaking, forcing doors, windows, *locks* or buildings or other places where goods, wares, merchandise or money is kept, with the intention of using them burglariously shall be confined in the penitentiary for not less than two nor more than ten years.

(Emphasis added.) The Commonwealth charged that the defendant possessed various burglary tools and had the intention "to force a lock on a place where goods, wares, merchandise, and money was kept, to-wit: A Royal Crown soft-drink vending machine. . . ." A "lock" was expressly covered by the statute. The enumeration of locks and the other subjects would bring vending machines within "other places" under the doctrine of *noscitur a sociis*—"the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute." 73 Am.Jur.2d *Statutes* § 213, at 406–07 (1974). *See Wright v. State Board of Engineering Examiners,* 250 N.W.2d 412 (Iowa 1977). Section 713.1 of the Iowa statutes contains no enumeration of "locks." On the contrary, the associated words are, "or who *remains therein* after the person's right, license or privilege *to be there* has expired. . . ." (Emphasis added.)

A Florida statute defined a "burglarious tool" in a far different manner than our section 713.1, in the 1966 case of *Estevez v. State,* 189 So.2d 830, 831 (Fla.Ct.App.1966):

> Whoever makes or mends, or begins to make or mend, or knowingly has in his possession any engine, machine, tool or implement adapted and designed for cutting through, forcing or breaking open any building, vault, safe or other depository, in order to steal therefrom money or other property, or to commit any other crime, knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ or allow the same to be used or employed for such purpose, shall be punished by imprisonment in the state prison not exceeding ten years, or by fine not exceeding five thousand dollars.

The Florida court evidently held that a soft drink machine is an "other depository." It merely stated, "The evidence was more than sufficient that the tire iron was a 'burglarious tool' and that defendants intended to use it to commit a crime." *Id.* The Iowa statute does not use the "depository" language, and the Florida statute does not contain language comparable to the "remains therein" and "to be there" language of the Iowa statute.

Likewise distinguishable is the 1968 case of *State v. Wilson,* 7 Ariz.App. 384, 439 P.2d 831 (1968). There the statute provided:

> A person who makes, keeps or sells, or has in his possession, a false key or other instrument or contrivance for the purpose of entering a building, or a safe, chest, trunk or other place of safekeeping for money, goods or other property, or any place where freight is on vehicles for transportation, or a railway car or vehicle kept or used for transportation of passen-

gers or freight, with intent to commit theft or other crime in any of such places, is guilty of a felony.

*Id.* at 385 n.1, 439 P.2d at 832 n.1. The associated words, "safe, chest, trunk or other place of safekeeping for money, goods or other property," brought vending machines within the ambit of the statute, although the point was not directly involved in the appeal. The defendant's contentions on appeal were illegally obtained evidence, lack of corroboration of accomplice, insufficient evidence of criminal intent, and excessive sentence.

The State's best authority, perhaps, is the 1968 decision of *Shumate v. Commonwealth*, 433 S.W.2d 340 (Ky.1968). The court held that a vending machine in which soft drinks were placed came within a Kentucky statute:

> Any person who feloniously, in the night or day, breaks any warehouse, storehouse, office, shop or room in a wharf, steam or other boat, whether such place is or is not a depository for goods, wares or merchandise, and whether the goods, wares and merchandise are or are not exposed for sale, with intent to steal, or who feloniously takes therefrom or destroys anything of value, whether the owner or other person is or is not in such house, office, room or shop, shall be confined in the penitentiary for not less than one (1) nor more than five (5) years.

Ky.Rev.Stat. § 433.190 (1973). The court concluded, "The fact that [vending machines] are movable, unlike a permanent structure, should not be a controlling factor in determining what a storehouse is; that they do not have roofs but are enclosed in metal cabinets should not be important." 433 S.W.2d at 343. In reaching that conclusion the court stated:

> In undertaking a proper construction of KRS 433.190, it is interesting to keep in mind that this statute was enacted in 1893 when vending machines were unknown. It is also of some historic interest to note that the Rules of Criminal Procedure have undergone some change from the strict technical rule of construc-

tion to a somewhat modified, more liberal, practical construction.

*Id.* Contrast *State v. Davis*, 271 N.W.2d 693, 695 (Iowa 1978) (inapplicability of escape statute under the facts: " '[A]n act penal in nature, generally one which imposes punishment for an offense against the state, is interpreted strictly.' "); *State v. Burtlow*, 299 N.W.2d 665, 669 (Iowa 1980) ("Because the statute is penal, it must be construed strictly. Doubts are resolved in favor of the accused."). Again the statute involved in *Shumate* contained no language, as in our statute, that the person "remains therein" after his right "to be there" has expired.

In 1970 an Illinois Appellate Court decided that a locked vending machine constitutes "any depository designed for the safekeeping of property." *People v. Oliver*, 129 Ill.App.2d 83, 89, 262 N.E.2d 597, 598 (1970). The statute provided:

> Whoever possesses any key, tool, instrument, device, or any explosive, suitable for use in breaking into a building, housetrailer, watercraft, aircraft, motor vehicle as defined in the Illinois Motor Vehicle Law, approved July 11, 1957, as amended, railroad car, *or any depository designed for the safekeeping of property*, or any part thereof, with intent to enter any such place and with intent to commit therein a felony or theft shall be imprisoned in the penitentiary from one to 2 years.

*Id.* at 87, 262 N.E.2d at 598. The case is quite similar to *Estevez*, and what was said about that decision need not be repeated here.

In 1971 the Missouri Supreme Court decided *State v. Stoner*, 473 S.W.2d 363 (Mo. 1971). The statute involved provided:

> Any person who makes, mends, designs or sets up, or who has in his custody or concealed about his person any tool, false key, lock, pick, bit, nippers, fuse, force screw, punch, drill, jimmy, bit, or any material implement, instrument, or other mechanical device whatsoever, adapted, designed, or commonly used for breaking into any vault, safe, railroad car, boat,

vessel, warehouse, store, shop, office, dwelling house, or door, shutter or window of a building of any kind, shall be guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than two years, nor more than ten years.

473 S.W.2d at 366–67. The court stated:

The question simply is whether a "safe" encompasses a coin receptacle in a pay telephone so that appellant's conviction of possessing tools and implements for the purpose of breaking into the receptacle may stand. Webster's Third New International Dictionary defines "safe" as "1: a place or receptacle to keep articles safe: as * * * b: a metal box or chest sometimes built into a wall or vault to protect money or other valuables against fire or burglary." Black's Law Dictionary, Revised Fourth Edition, defines "safe" as "a metal receptacle for the preservation of valuables." The above-related evidence clearly shows that the telephone company's pay telephone was designed so that coins deposited in it and falling into the coin box were protected against break-in by two locks and a double-headed nail. The purpose of the design was to protect the valuables, i.e., the coins, belonging to the company. The coin box is constructed of heavy metal albeit not as thick as Mr. Peterson described the Diebold Company safes to be. There can be no doubt that the metal coin box is a "safe" within the statute, and this accords with the statement in 33 A.L.R.3d 798, 846, "The courts have tended to take an expansive view of the types of depositories included within the ambit of the respective statutes relating to burglars' tools."

473 S.W.2d at 368. *Cf. Bagwell v. State*, 51 Ala.App. 663, 288 So.2d 450 (1973) ("structure" does not include a coin operated washing machine); *Hulbert v. State*, 44 Ala.App. 300, 208 So.2d 94 (1968) (or a pay telephone).

The holding of the court majority that section 713.1 covers a money changer runs counter to our long standing rule that criminal statutes are strictly construed and not enlarged by construction. *State v. Kool*, 212 N.W.2d 518 (Iowa 1973). The section is substantially broader than common-law burglary, but it is not broad enough to include money changers.

The trial court should have dismissed the charge as made. I would reverse the judgment.

REYNOLDSON, C. J., and McGIVERIN and LARSON, JJ., join in this dissent.