STATE of Missouri, Respondent,

v.

Robert Joe STONER, Appellant.

No. 55785.

Supreme Court of Missouri, Division No. 2.

Nov. 8, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 13, 1971.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Neale, Newman, Bradshaw & Freeman, O. J. Taylor, Joseph A. Bohrer, Springfield, for appellant.

PRITCHARD, Commissioner.

Appellant was found guilty by the verdict of a jury of possession of burglar's

tools under § 560.115, RSMo 1969, V.A.M. S. As a second offender the court sentenced him to five years imprisonment in the Department of Corrections.

The principal issue is whether a "coin box" in a public pay telephone is a "safe" within the meaning of § 560.115. Appellant was charged with "wilfully, unlawfully and feloniously [having] in his custody one (1) tubular lock picking device, one (1) expanding bolt, one (1) false key to upper housing of a pay telephone, one (1) ratchet, two (2) sockets, and one (1) mechanical puller, all of which aforesaid articles being then and there material, implements, instruments and mechanical devices, adapted, designed and commonly used for breaking into a safe, to wit: a metal receptacle of a pay telephone, commonly called a 'coin box', said receptacle being used for the preservation of money inserted into said telephone * * *." Appellant says not only that the coin box is not a safe within the meaning of the statute, but that the state's evidence showed the implements he possessed were not "adapted, designed and commonly used" to break into a coin box, as charged, but rather the pay telephone in which the coin box was contained, a fatal variance. Under his point I, he claims the state's case failed for both reasons.

On September 15, 1969, Officer Vic Rohrer was driving a patrol car in the south central area of Springfield, Missouri, at about 8:00 p.m. In response to a radio dispatch he proceeded to the 500 block of South Grant where he found telephone booths. He saw appellant inside the north booth and a woman (who was pointed out in court) standing outside it. As Rohrer and other officers arrived he observed appellant hurriedly leaving the north telephone booth, stepping out and coming directly at Rohrer who was then 10 or 15 feet away. At that time appellent stated that he had placed some money in the pay telephone and was unable to make his call or to get his money back. Rohrer looked over the scene and saw a briefcase on the ground near the two telephone booths and that there were indentations or heavy marks on the south pay telephone which appeared to have been recently made. There was an alarm system on the south pay telephone but not on the north one. The briefcase was open and Rohrer observed therein a ratchet, some sockets, a steel bar which had a large screw through one end, some vise grips, screw drivers and a small pair of pliers. These articles were marked as exhibits and received into evidence over appellant's objection that they were the subjects of an unlawful search and seizure.

After observing the above tools Rohrer arrested appellant and verbally advised him of his constitutional rights, then searched him. In appellant's left front shirt pocket he found a split bolt and nut, and in his left rear pocket he found a five-inch steel shank with a brass collar and seven set screws with little wires extending out of the brass collar. In appellant's front waistband Rohrer also found a door of the type used on the front lower housing of pay telephones. This door did not come from either of the aforementioned telephone booths, the doors of which were intact at the time. In appellant's left front trouser pocket Rohrer found a key, and in the left front shirt pocket a tear gas cartridge, a ball point pen and a brass slug. The key (Exhibit 9) was inserted by Rohrer into the upper housing of the south pay telephone and the key did fit it and did unlock the upper housing.

The following day Rohrer accompanied a Mr. Renfrow, an employee of Southwestern Bell Telephone, in tracing back serial numbers "on the doors leading us to other phones that were broken into."

Edwin P. McCaskill was a Security Manager for the Southwestern Bell Telephone Company, with duties to investigate telephone thefts. He was familiar with the tools used to accomplish pay telephone thefts, and was familiar with State's Exhibit 12, a pay telephone model, which was similar in security devices to those of a

photograph of the south telephone at the scene of appellant's arrest. A coin deposit chute had been added which made it difficult to put a slug into the telephone, and an Ace type lock had been added. The Ace lock had a barrel which was called a tubular lock which screwed into the wall securing the upper part of the telephone so it could not be removed, so the interior could not be manipulated, and so that part of the mechanism could not be knocked out to get down to the money contained in the lower part of the telephone. Additionally, the upper housing had a standard "Ten G" key used all over the United States, but this key did not allow access to the coin box which had its own third locking mechanism. The coin receptacle had a number on it from which it could be found where it was located. The coin receptacle itself had a seal on it which prevented thefts by the telephone company's own people when they brought the box in. The coin box also had a double-headed nail in it which was dropped through a hole securing the box. The nail could not be removed unless the upper part of the telephone was removed so that one could reach inside and pull up the nail. McCaskill had seen tools similar to those found by Officer Rohrer and which were in evidence. He described them: "These are instruments which have been found in the possession of people who were either in the act or had recently completed the burglary or the destruction or robbery of a coin telephone by removal of the door locking the coin compartment." McCaskill demonstrated to the jury how the instruments are used on a telephone to gain access to the coin box, and, according to the transcript, the tools and keys used were effective to accomplish removal of the coin box.

Arlin Renfrow was Unit Manager for Southwestern Bell Telephone Company and was familiar with the two telephones at the 500 block of South Grant. The south telephone at that location had a contact alarm which went off when the upper housing was removed. From his records he was able to determine where State's Exhibit 11, telephone door 3A0042 (found in appellant's possession) belonged—at 340 West Walnut, Carl's Drivein Liquor Store. He investigated the telephone at that location on September 17, and found that the door wedged in the lower housing was held there by a piece of paper. The door was removed and it was found that it was not the one which belonged there and the coin receptacle was not behind the door. The bolt on the lock was bent over out of shape. This door was numbered H44355 and belonged at Crank's Drug Store at Boonville and Commercial, where the door was numbered IF7355 and belonged at the Glower Grocery at 1600 West Division. The telephone door at the latter address was numbered IF6536 belonging at the IGA Store at 1121 East Commercial. Likewise, that door, numbered U92941, belonged at Brigance Grocery Store at 509 South National. The 509 South National door did not have a number on it. There was testimony that the manner of breaking into a telephone coin box included carrying a door to it which had been taken from a previously broken into telephone, and so on. Renfrow could not go any farther on his search after finding the unnumbered door at 509 South National.

As an offer of proof taken outside the jury's hearing and refused by the court, Arthur L. Peterson, Branch Officer Manager for Diebold Incorporated, a safe manufacturer, defined that company's products as safes (of steel, one-fourth inch and more in thickness) and testified that he did not understand State's Exhibit 12, a coin box, to be a safe.

Section 560.115 is as follows:

"Any person who makes, mends, designs or sets up, or who has in his custody or concealed about his person any tool, false key, lock pick, bit, nippers, fuse, force screw, punch, drill, jimmy, bit, or any material implement, instrument, or other mechanical device whatsoever, adapted, designed, or commonly

used for breaking into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house, or door, shutter or window of a building of any kind, shall be guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than two years, nor more than ten years."

■ Appellant first argues that the state's evidence showed the tools in question were "rather sophisticated devices designed *solely* for the purpose of obtaining access to the pay telephone *itself*. There was no evidence that showed, or would tend to show, that these tools were designed or adapted (or for that matter even necessary) for breaking into the coin receptacle of a pay telephone, as charged in the information." Appellant says this evidence constitutes a fatal variance between the information and the proof within State v. Stewart, 228 Mo.App. 187, 63 S.W.2d 210, 213, and State v. Plant, 209 Mo. 307, 107 S.W. 1076. The state counters with its argument that a pay telephone has a dual function—to enable one for money to make a telephone call; and, of primary concern to the telephone company, to receive and protect money placed in the machine—and a pay telephone is a telephone and a receptacle for the preservation of money. The state's evidence showed clearly that to gain access to the coin box it was necessary to manipulate tools and devices on the locks above. These locks were there for the primary purpose of protecting the money in the coin box. The proof showed that the tools found in appellant's possession were adapted for breaking into a telephone *unit* in order to remove coins from the lower receptacle. A part of the operation included removal of an upper door so that a doubleheaded nail securing the coin box could be removed. It is thus apparent that there was no variance between the charge and the proof. Appellant's contention that the state agreed that the receptacle had nothing to do with the case is without merit. That matter arose during the testimony of

witness McCaskill in which he was describing the coin box. "JUROR, MRS. TURNER: Does this number have any bearing? THE WITNESS: As I understand it, this is a case where the receptacle has nothing to do with the case, as I understand it. MR. O'NEAL: That's right. THE WITNESS: But again, this is a security feature. This is a number that would be on this box alone. No other box anywhere in this country has that number on it and we can tell you from our records exactly where it was located at all times. Q. (By Mr. O'Neal) Mr. McCaskill, you referred to a number on the coin box. Does it have any relationship to a number on the door plate? A. No, they are completely separate numbers. * * *" It is apparent that the witness' testimony taken in context was in answer to the juror's question clarifying the fact that the coin box number was not significant as contrasted to door plate numbers such as the one found in appellant's possession.

■ Relying upon State v. Aspell, 10 Ohio St.2d 1, 225 N.E.2d 226, appellant says that a coin receptacle within a pay telephone is not within the meaning of the word "safe" in § 560.115. In the Aspell case the defendants were charged with actual violation of a statute in that they did "maliciously and forcibly, by and with the aid of hand tools, force an entrance into a depository box containing money, belonging to the Ace Vending Company." The statute prohibited the blowing or attempting to blow, or the forcing or attempting to force, an entrance into a safe, vault or depository box wherein there is contained any money or thing of value. The court held that a ten-pack cigarette carton with its top removed which received coins in a metal cigarette vending machine was not a "depository" within the meaning of the statute. Apparently the court reasoned, in applying the maxim "ejusdem generis," that the word "depository" in the statute embraced only a meaning in similar character as the words "safe" and "vault" first used in the statute. No such construction

is called for here, and on its facts it is to be distinguished.

Although our statute does not use the word "depository" the meaning of § 560.-115 in prohibiting the possession of burglar tools is clear. The question simply is whether a "safe" encompasses a coin receptacle in a pay telephone so that appellant's conviction of possessing tools and implements for the purpose of breaking into the receptacle may stand. Webster's Third New International Dictionary defines "safe" as "1: a place or receptacle to keep articles safe: as * * * b: a metal box or chest sometimes built into a wall or vault to protect money or other valuables against fire or burglary." Black's Law Dictionary, Revised Fourth Edition, defines "safe" as "a metal receptacle for the preservation of valuables." The above-related evidence clearly shows that the telephone company's pay telephone was designed so that coins deposited in it and falling into the coin box were protected against break-in by two locks and a double-headed nail. The purpose of the design was to protect the valuables, i. e., the coins, belonging to the company. The coin box is constructed of heavy metal albeit not as thick as Mr. Peterson described the Diebold Company safes to be. There can be no doubt that the metal coin box is a "safe" within the statute, and this accords with the statement in 33 A.L.R.3d 798, 846, "The courts have tended to take an expansive view of the types of depositories included within the ambit of the respective statutes relating to burglars' tools." And see the there reported cases of Commonwealth v. Marganon, Ky., 370 S.W.2d 821, where the court held that a vending machine was a place within the statute where goods, wares, merchandise or money are kept as against the contention that the statute was limited to dwelling houses. And see Commonwealth v. Tilley, 306 Mass. 412, 28 N.E.2d 245, holding that an automobile trunk was a depository within the statute; State v. Klein, 91 N.J.Super. 509, 221 A.2d 550, where possession of a screw driver and car keys with intent to break into automobile trunks was held to be a violation of the burglary tool statute; and State v. Wilson, 7 Ariz.App. 384, 439 P.2d 831, 832, Fn. 1, affirming a conviction for possessing false keys for the purpose of entering vending machines, where the statute made it a felony to possess "a false key or other instrument or contrivance for the purpose of entering a building, or a safe, chest, trunk or other place of safekeeping for money, * * *."

It is true as appellant says, citing State v. Getty, Mo., 273 S.W.2d 170; State v. Chadeayne, Mo., 323 S.W.2d 680 and other cases, that there is a general rule of strict construction of penal or criminal statutes and that doubts are to be resolved in favor of the accused. In view, however, of the above definition of a safe, which would encompass the metal coin receptacle here, and the obvious intent of the legislature to protect such depositories by making it a felony to possess tools, implements, etc., adapted for breaking into the same, the rule of strict construction should not be here applied. Rather, the statement in State v. Ballard, Mo.App., 294 S.W.2d 666, 669[1–4], should apply: "The rule of strict construction is not violated by according the language used by the legislature its full meaning in support of the policy and aim of the enactment. The rule does not compel a narrow or forced construction, out of harmony with the manifest purpose and intent of the statute or one which would exclude cases from it that are obviously within its provisions." See also 82 C.J.S. Statutes § 389, pp. 929–930. In the Tilley case, supra, the court said, "'Statutes framed in general terms commonly look to the future and may include conditions as they arise from time to time not even known at the time of enactment, provided they are fairly within the sweep and the meaning of the words and falling within their obvious scope and purpose.' * * * The aim of the statute [first enacted in 1853] is to safeguard property kept for safekeeping, even though tempo-

rarily, in an automobile trunk as much as it is to safeguard property contained in a vault or safe, where, in either case, the property is secure until the protection of its depository is destroyed by breaking it open by a tool or implement in the hands of one wrongfully seeking possession of the property." (28 N.E.2d 247[2, 3].) (Brackets added.) This disposes of appellant's contention that § 560.115, first enacted in 1899, did not include a coin box in a pay telephone, which was not then in existence. Nor does the holding herein cause an ex post facto application of the statute as contended.

■ Instruction No. 3 given by the court defined the term "safe" as "a metal receptacle for the preservation of valuables." Appellant says that § 560.115 does not include a definition of a "safe" as contained in the instruction, and such definition is so broad and imprecise as to be beyond the language and intent of the statute. The point is ruled above as to the sufficiency of the state's evidence and reference to dictionary definitions as acceptable. The definition does not unduly broaden the definition of the word "safe." A charge under § 560.115 relates to the possession of tools for the purpose of breaking into a safe, and each case must turn upon its own facts. Here the evidence is clear that the tools and instruments in appellant's possession were adaptable and effective to gain access to the coin receptacle, and thus it is of no consequence that the tools could have been used for a legitimate purpose. State v. Young, Mo., 425 S.W.2d 177, 182, cited by appellant, is inapplicable under the facts here.

■ Appellant also contends that the court erred in giving Instruction No. 2 requiring that he possessed the implements in question with a burglarious purpose, and the definition in Instruction No. 3 defined "burglarious" as the "breaking into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house or building with the intent to commit some

felony to steal therein." He says that breaking into a safe or vault is not burglary under any Missouri statute. He argues that the "intent to commit some felony or to steal" as used in Instruction No. 2 relates only to the burglary of dwelling houses (§§ 560.040–560.060) or bank buildings (§ 560.075), and "Had the defendant in this case actually gained access to the pay telephones on South Grant and taken money therefrom, he could not have been adjudged guilty of burglary, *because he did not break into one of the buildings enumerated by the statutes.*" This ingenious argument overlooks that § 560.070 provides that breaking into "any booth" with intent to steal or commit any crime therein shall be burglary in the second degree. This proposition was considered in People v. Miller, 95 Cal.App.2d 631, 213 P.2d 534; and Sanchez v. People, 142 Colo. 58, 349 P.2d 561, and other cases reported in 78 A.L.R.2d 778, 781, § 3[a]. In the Miller case defendant's conviction of burglary was affirmed where he opened the door of the pay telephone booth, broke the coin box with a large hammer and took the money therefrom. In the Sanchez case the conviction was affirmed where defendant had been caught in the act of prying off the coin box in an outside telephone booth, as against the contention that the booth was not a building within the meaning of the amended statute. The instructions are not erroneous for the claimed reason.

■ Appellant's next contention is that the court erred in overruling his motion to suppress evidence and admitting into evidence State's Exhibits 3 through 11 (certain tools, implements, instruments, and the lower cover of a pay telephone). In response to a dispatch, Officer Rohrer arrived at the scene within two minutes and observed appellant coming from the north booth. Although he did not immediately place appellant under arrest, he did so after he observed that the south telephone had marks on it and after he observed the open briefcase with tools therein. These events constituted probable cause for the

arrest. See State v. Caffey, Mo., 436 S. W.2d 1. The contents of the briefcase were in plain view of Officer Rohrer. State v. Watson, Mo., 386 S.W.2d 24, 28[1], and cases cited. The search of appellant, revealing additional implements and the telephone cover, was also the incident of a lawful arrest. No error is shown by reason of admission of these exhibits into evidence.

■ The admission of testimony of other pay telephones being broken into was not error under the facts of this case. As above related, the testimony showed a chain of activity culminating in appellant being in possession of the last lower cover of a pay telephone, this being in accordance with the practice of coin box thieves to remove covers and place them in a subsequently pilfered telephone to hide the theft, as the evidence also shows. Such activity constitutes an exception to the general rule of inadmissibility of evidence of other crimes. State v. Wing, Mo., 455 S.W.2d 457, 464.

■ Appellant's last point is that he was improperly sentenced under § 556.280, RSMo 1969, V.A.M.S., as a second offender. Records of the Cass County Circuit Court were received in evidence showing that appellant was sentenced to three years in the Department of Corrections for stealing, a felony, on January 4, 1960. Appellant says that under § 216.370, RSMo 1959, as it existed on the date of sentence, he could not have been sentenced to any institution except the Intermediate Reformatory, and that there is no evidence that he was ever imprisoned in the penitentiary. The evidence shows that he was in fact received at the Reception Diagnostic Center, and was assigned to the Intermediate Reformatory. The Second Offender Act by its terms requires only that a prior conviction be punishable by confinement in the penitentiary. State v. Kent, Mo., 382 S. W.2d 606. Compare also State v. Nolan, Mo., 316 S.W.2d 630, holding that the fact that the defendant was sentenced to and did serve his term in the Intermediate Reformatory (and not in the penitentiary) did not make § 556.280 inapplicable.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.