58 N.Y.2d 206 (1983)
Eliza M. Goncalves, Also Known as Eliza G. M. Salles, Appellant,
v.
Regent International Hotels, Limited, Doing Business as Mayfair Regent, et al., Respondents. (Action No. 1.)
Sarah Cecconi, Appellant,
v.
Regent International Hotels, Limited, Doing Business as Mayfair Regent, et al., Respondents. (Action No. 2.)
Court of Appeals of the State of New York.
Argued January 5, 1983.
Decided February 17, 1983.
A. Richard Golub for Eliza M. Goncalves, appellant.
Robinson B. Lacy, Michael W. Weir and James H. Carter for Sarah Cecconi, appellant.
Franklin D. Tell and Solomon M. Cheser for respondents.
Jack P. Jefferies, Stephen J. Crimmins and John J. Murphy for the New York State Hotel & Motel Association, Inc., and another, amici curiae.
Judges WACHTLER, FUCHSBERG and MEYER concur with Chief Judge COOKE; Judge JASEN dissents and votes to affirm in a separate opinion in which Judges JONES and SIMONS concur.
*211 Chief Judge COOKE.
A hotel will not be availed of limited liability provided by section 200 of the General Business Law for the loss or destruction of a guest's property delivered to it for safekeeping unless the hotel establishes that it provided a "safe" within the meaning of that section. The hotel may be charged with its failure to provide an adequate facility.
Plaintiffs in these two consolidated cases were guests in late November, 1979, at the Mayfair Regent, a Manhattan luxury hotel owned and operated by defendants. Each plaintiff was traveling with an extensive jewelry collection allegedly worth $1,000,000. As required by law, notices were posted in the hotel that a safe was available in the office for the secure storage of money, jewels, and other valuable items. Plaintiffs each delivered their jewelry over to the management for deposit. In doing so, they signed a "Safe Deposit Box Receipt" which set forth certain terms and conditions.[1]
*212 The security device provided by defendants consisted primarily of rows of safe-deposit boxes that required two keys  one held by the guest  to open. The safe-deposit boxes were housed in a room built of plasterboard with access controlled only by two hollow-core wood doors, one of which had an ordinary residential tumbler lock and the second of which had no lock at all. Plaintiffs claim that this room was unlocked, unattended, and open to the general public. Also, it is alleged that the card file, showing which guest was using each box and when property had been deposited and removed, was exposed to public scrutiny.
On November 25, 1979, thieves entered the hotel and broke into a limited number of safe-deposit boxes, including those used by plaintiffs. The boxes were emptied of their valuables.
Plaintiffs independently commenced these actions to recover for the theft of their jewelry. Plaintiff Goncalves stated four theories for relief in her third amended complaint: (1) gross negligence in providing security; (2) breach of contract by defendants' failure to fulfill an earlier promise to install a secure area for their safe-deposit boxes; (3) breach of duty as a bailee; and (4) breach of section 200 of the General Business Law by defendants' failure to provide a safe as required by that statute. Plaintiff Cecconi relied on two theories: (1) breach of duty as a bailee; and (2) negligence in providing security. Each plaintiff prayed for damages in the amount of $1,000,000.
Defendants denied plaintiffs' allegations and raised three affirmative defenses in their answers. First, they relied on section 200 of the General Business Law as limiting plaintiffs' recovery to $500. Defendants also claimed breaches of the safe-deposit agreements occasioned by plaintiffs' deposit of goods worth more than $500. Last, defendants relied on the agreement to limit their liability to $500.
*213 The two actions were consolidated and defendants moved to dismiss the complaints or, in the alternative, have judgment entered against them in the amount of $500. Plaintiffs cross-moved to strike defendants' affirmative defenses and for summary judgment. Special Term directed entry of judgment of $500 against defendants in favor of each plaintiff. The cross motions to strike and for summary judgment were denied. The Appellate Division unanimously affirmed. This court granted leave to appeal (57 N.Y.2d 601). The order below is now modified.
The centerpiece of this appeal is section 200 of the General Business Law, which places a limitation on the absolute liability for the loss or destruction of a guest's property to which a hotelkeeper was subject at common law. That statute provides:
"§ 200. Safes; limited liability
"Whenever the proprietor or manager of any hotel, motel, inn or steamboat shall provide a safe in the office of such hotel, motel or steamboat, or other convenient place for the safe keeping of any money, jewels, ornaments, bank notes, bonds, negotiable securities or precious stones, belonging to the guests of or travelers in such hotel, motel, inn or steamboat, and shall notify the guests or travelers thereof by posting a notice stating the fact that such safe is provided, in which such property may be deposited, in a public and conspicuous place and manner in the office and public rooms, and in the public parlors of such hotel, motel, or inn, or saloon of such steamboat; and if such guest or traveler shall neglect to deliver such property, to the person in charge of such office for deposit in such safe, the proprietor or manager of such hotel, motel, or steamboat shall not be liable for any loss of such property, sustained by such guest or traveler by theft or otherwise; but no hotel, motel or steamboat proprietor, manager or lessee shall be obliged to receive property on deposit for safe keeping, exceeding five hundred dollars in value; and if such guest or traveler shall deliver such property, to the person in charge of such office for deposit in such safe, said proprietor, manager or lessee shall not be liable for any loss thereof, sustained by such guest or traveler by theft or otherwise, in any sum exceeding the sum of five hundred *214 dollars unless by special agreement in writing with such proprietor, manager or lessee."
Several issues requiring the explication of section 200 are raised. Plaintiffs argue that the statute limits absolute liability only, but does not exonerate a hotelkeeper whose negligence is the proximate cause of the loss of the goods delivered for safekeeping. Alternatively, plaintiffs propose that a hotelkeeper who does not provide a "safe" within the meaning of the statute may not claim the benefits of section 200. Defendants argue that section 200 limits their liability no matter what the cause of loss and that they provided a "safe" as required. Defendants further posit that the statute does not require a safe, but that "[an]other convenient place" will satisfy the conditions for invoking the section.
At common law, an innkeeper was an insurer of goods delivered into his or her custody by a guest, and so was absolutely liable for the loss or destruction of such goods "unless caused by the negligence or fraud of the guest, or by the act of God or the public enemy." (See Hulett v Swift, 33 N.Y. 571, 572.) The practical root of this rule lay in the days when travel was perilous, highway robbers abounded, and the only safe sanctuary at night usually was an inn (see Hulett v Swift, supra, at pp 572-573; Browne, Bailments [1896], pp 81-83; Edwards, Bailments [2d ed, 1878], § 462, pp 335-336; Schouler, Bailments [3d ed, 1897], § 274, pp 276-278; 43A CJS, Inns, Hotels, and Eating Places, § 36, p 880; 9 ALR2d 818). The obligation encompassed not only goods actually delivered into the innkeeper's possession, but also property in the guest's room (see Ramaley v Leland, 43 N.Y. 539; cf. Bendetson v French, 46 N.Y. 266). "Undoubtedly an innkeeper, by the common law, is held responsible, in this capacity of exercising a public vocation, for whatever personal property of the guest the latter may have brought infra hospitium. Not only the guest's animals and private equipage may thus claim protection, his wearing apparel and personal jewelry, his baggage and travelling necessaries, but, indeed, money and valuables to an unlimited amount." (Schouler, Bailments [3d ed, 1897], § 283, p 288.)
*215 The common-law rule placed a heavy burden on the hotelkeeper, who could be held liable for a guest's loss although not having any culpability for the property's theft or destruction (see Edwards, Bailments [2d ed, 1878], § 463, pp 336-337; see, also, Browne, Bailments [1896], pp 83-84; 2B Warren's Negligence [3d ed], Hotelkeepers, § 5.01). The New York Legislature early acted to restrict the innkeeper's exposure by providing a statutory exception to the common-law rule. In 1855, the predecessor statute to section 200 of the General Business Law was enacted (L 1855, ch 421, § 1). Another law limiting the innkeeper's liability for loss by fire came into being 11 years later (L 1866, ch 658; see, also, General Business Law, § 202). And the Legislature also limited the innkeeper's financial responsibility for guests' property such as clothing and other items that could not be expected to be placed in a safe (L 1883, ch 227, § 2; see, also, General Business Law, § 201).
Being in derogation of the common law, section 200 is to be strictly construed (see Ramaley v Leland, 43 N.Y. 539, 541, supra). Moreover, to obtain its protection, the hotelkeeper must strictly adhere to its provisions (see Millhiser v Beau Site Co., 251 N.Y. 290, 295-296 [limitation not available when innkeeper's posted notices do not include information about limitation on liability]; see, also, Zaldin v Concord Hotel, 48 N.Y.2d 107, 113-114).
Given this statutory framework, negligence by the hotelkeeper may arise in two ways. First, the hotelkeeper may be negligent in such a way that he or she fails to satisfy the conditions of the statute. Second, the hotelkeeper may fulfill the statute's conditions, but by some other negligent act cause the loss of property. The former may be charged against the hotelkeeper and the benefits of section 200 denied, but the latter does not remove the protection of the limited liability accorded to the hotelkeeper by the statute.
Assuming that the proprietor meets the requirements of section 200, the statutory scheme limits his or her liability for general negligence. The terms of section 200 make no exception for loss caused by the negligence of the hotelkeeper. In contrast, sections 201 and 202 of the General *216 Business Law each limit liability unless the loss occurs through the fault or negligence of the hotelkeeper. The Legislature has maintained these distinctions for at least 100 years (compare L 1855, ch 421, § 1, with L 1866, ch 658, and with L 1883, ch 227). They should not be disturbed now.
A sound basis for the statutory distinctions can be divined. Section 200 is concerned with property  "money, jewels, ornaments, bank notes, bonds, negotiable securities or precious stones"  which items tend to have a value disproportionate to their size and are easily stored in facilities to protect them against theft or destruction. The statute's message to hotelkeepers is clear: If you provide a facility that will protect such property against theft or destruction, then your absolute liability will be limited (unless you expressly agree to assume greater financial responsibility). This is economically sensible as well, as it encourages a hotel to initially invest in the construction of a secure receptacle, but permits long-term savings through lower insurance premiums and lower payments if losses do occur.
The premise underlying this discussion is that an adequate facility is available to the guest. Section 200 requires that the proprietor "provide a safe" as one of the conditions for receiving the protection of the statute. As recently noted in Zaldin v Concord Hotel (48 N.Y.2d 107, 113, supra), the hotel is free to determine the extent to which it "provides" a safe, but there must be strict conformity with the terms of section 200 in order to obtain the benefit of the statute. In Zaldin, it was held that a hotel could not deny access to its safe during certain hours and then claim the circumscribed liability of section 200 at all times. Analogously, a hotel that effectively fails to provide any safe at all, whether intentionally or because the receptacle is negligently constructed, also cannot claim the protection.
What, then, is a "safe" within the meaning of section 200 of the General Business Law? The Legislature has provided no definition. And while other sources provide guidance (see, e.g., Black's Law Dictionary [5th ed], p 1199 ["(a) metal receptacle for the preservation of valuables"]; Webster's Third New International Dictionary [unabridged], *217 p 1998 ["a metal box or chest sometimes built into a wall or vault to protect money or other valuables against fire or burglary"]), their terms lack the perspective necessary to determining whether any particular receptacle is adequate.[2] Nor is the question one that may be answered by prescribing uniform technical specifications and measurements. A large, luxury hotel has far different security needs than a small, low-priced motel catering to a different clientele. It would be inappropriate for this court, with its lack of expertise, to specify a single safe that must be used by all hotels and motels, not only because of their varying needs but also because of the flexibility that is left to the proprietor (see Zaldin v Concord Hotel, 48 N.Y.2d 107, 113-114, supra; see, also, Akins v Glens Falls City School Dist., 53 N.Y.2d 325, 331).
In determining an appropriate definition of a "safe", there must be taken into account the risks that commonly threaten the type of property covered by section 200. Fire and theft, of course, come immediately to mind. Other dangers may also exist. To come within the contemplation of section 200 of the General Business Law, therefore, a "safe" should be a receptacle that, under the circumstances, provides adequate protection against fire, theft, and other reasonably foreseeable risks. In deciding this question, all aspects of a hotel's security system may be considered.
Section 200 is an affirmative defense (see Zaldin v Concord Hotel, supra, at p 115; Faucett v Nichols, 64 N.Y. 377, 380; Ramaley v Leland, 43 N.Y. 539, supra), and so the burden of proof lies on the defendant (see Faucett v Nichols, supra). Whether a "safe" was provided is a question of fact (cf. Friedman v Schindler's Prairie House, 224 App Div 232, 236-237, affd no opn 250 N.Y. 574 [whether establishment was "hotel" within scope of General Business Law a question of fact for jury]; Peters v Knott Corp., 191 Misc 898 *218 [adequacy of posting of notices required by General Business Law a question of fact for jury]). This, of course, does not mean that the issue must always be submitted to the jury. As with any factual issue, a Judge will make a determination on the evidence as a matter of law if there is no real controversy as to the facts (see Basso v Miller, 40 N.Y.2d 233, 241-242; see, also, Licari v Elliott, 57 N.Y.2d 230, 237-238; Akins v Glens Falls City School Dist., 53 N.Y.2d 325, 332, supra).
The dissent confuses the operations of construing statutes and of applying statutes. It is agreed that declaring the meaning of a statute is solely within the province of the court, as this constitutes part of its function to enunciate the law applicable in a case. The application of the statute, however, is a different matter. When there exists conflicting evidence, determination of the controversy is left to the fact finder (see, generally, 75 Am Jur 2d, Trials, §§ 319-321; cf. Winchell v Town of Camillus, 109 App Div 341, affd no opn 190 N.Y. 536 [error to submit interpretation of statute to jury, and undisputed defect one not within scope of statute]). The court today does no more than construe section 200 of the General Business Law by providing a standard where the Legislature has not, leaving application of that standard to the fact finder. Indeed, under the approach urged by the dissent, it would appear that all statutory rights would be removed from the fact finder's scrutiny.[3]
*219 In the present case, it was improper to award summary judgment. Plaintiffs submitted an affidavit by an expert having 29 years' experience in the design, installation, and sale of safes and vaults. This witness expressed his opinion that defendants' facilities were inadequate, stating that safe-deposit boxes can be invaded in less than 30 seconds and that they should be housed in a vault, not a room of plasterboard and wooden doors. Defendants relied on the existence and operation of the safe-deposit boxes. Under the circumstances, there exists a material issue of fact as to whether defendants' safe-deposit boxes constituted a "safe" within the meaning of section 200.
Defendants, relying on the language in the first clause requiring "the proprietor * * * [to] provide a safe in the office * * * or other convenient place" (General Business Law, § 200), argue that a safe per se is not required by the statute. Defendants propose that this authorizes the hotel to provide a safe or another convenient place for storing valuables. This is not persuasive. Such an interpretation would allow a box or a bag kept behind the counter or a common coat closet to be interchangeable with a state-of-the-art steel vault. Clearly, this would defeat the policy underlying the statute, as discussed above. In addition, it is contrary to the long-standing comprehension that "other convenient place" refers only to the location of the safe, and not to the nature of the receptacle itself (see Edwards, Bailments [2d ed, 1878], § 467, p 341). To put it another way, the words "other convenient place" relate to "the office", not to the "safe"; both the "office" and the "convenient place" specify the area in which the "safe" is to be located. Finally, it is noted that the statute itself is entitled "Safes; limited liability"; it does not refer to "safes or other convenient places". This may be taken as some indication that the Legislature intended that a safe, and nothing else, would suffice as a security device (see McKinney's Cons Law of NY, Book 1, Statutes, § 123, subd a, p 246).
As the matter must be returned for further proceedings, the court shall address the contention that defendants should not be allowed to take advantage of the agreements *220 that were signed by the plaintiffs when they obtained the use of the safe-deposit boxes. Defendants assert that plaintiffs breached these contracts or, alternatively, that the agreements establish a maximum value of $500 for the property left in the boxes.
The enforceability of the agreements can be decided without first determining whether defendants met the requirements of section 200.[4] Assuming first that defendants did provide a "safe" within the contemplation of the statute and met the other prerequisites for obtaining the benefits of that law, there is no need to present the agreements as they are merely cumulative to the protection afforded by the statute. More important, however, is the contracts' unenforceability under traditional precepts of contract law. The agreement recites: "IN CONSIDERATION of the privilege herewith granted me by MAYFAIR HOUSE whereby I am allowed the sole use of an individual safe deposit box". The contract is manifestly void for failure of consideration. To obtain the $500 limitation, the proprietor is required by statute to provide a safe to the guest. This statutory obligation cannot be transformed into a contractual performance, nor may the guest's statutory right be transformed into a contractual privilege. A promise to perform an existing legal obligation is not valid consideration to provide a basis for a contract (see Ripley v International Rys. of Cent. Amer., 8 N.Y.2d 430, 441).
Assuming that defendants did not provide the security required by section 200, then the agreements are unenforceable as against public policy. Allowing such agreements to be enforced would encourage hotels to provide lesser protection than is required by the statute. In addition, the present agreements result in a guest's waiver of rights without warning. Certainly, when the guest is justified in believing that the facilities are constructed to provide adequate protection against fire or theft or other reasonably foreseeable risk, the hotel should not be allowed *221 to obtain a waiver of rights without revealing that it is actually proffering a lesser security (cf. Gross v Sweet, 49 N.Y.2d 102, 108-110).
In summary, defendants may not invoke the protection of section 200 of the General Business Law without proving that it provided a "safe" within the meaning of that law. There exists a material question of fact as to whether defendants supplied a receptacle that, under the circumstances, provided adequate protection against fire, theft, and other reasonably foreseeable risks. The safe-deposit box receipts, signed by each plaintiff, are unenforceable agreements and so may not be relied on by defendants in their defense.
The parties' other contentions have been considered and are found to be without merit.
Accordingly, the order of the Appellate Division should be modified, with costs to plaintiffs, by denying defendants' motion for summary judgment and by granting plaintiffs' cross motions to dismiss defendants' affirmative defenses to the extent of dismissing the second and third affirmative defenses, and, as so modified, affirmed.
JASEN, J. (dissenting).
The majority today holds that a jury and not a court must decide what constitutes a "safe" within the meaning of section 200 of the General Business Law. Since I believe that it is a well-established principle of law, based upon sound policy considerations, that it is for the court, rather than a jury, to construe the meaning of words contained in a statute, I am compelled to dissent from the majority holding.
What is involved here is simply a question of pure statutory construction. The issue presented is whether or not a bank of individually locked metal safe-deposit boxes enclosed in a separate sheetrock room constitutes a "safe", as that term is used in section 200 of the General Business Law.
The New York Legislature enacted chapter 421 of the Laws of 1855, the predecessor to current section 200 of the *222 General Business Law, for the purpose of protecting hotels from "undisclosed excessive liability". (Millhiser v Beau Site Co., 251 N.Y. 290.) In order to avail itself of the statutory limitation of liability, a hotel is required, inter alia, to make a safe available to guests who wish to safeguard their valuables. The Legislature, however, did not define the term "safe", nor did it provide a list of the different types of facilities which would be encompassed by that term. Instead, as lawmakers often do when it is impossible to spell out in advance every contingency in which the statute could apply (see People v Illardo, 48 N.Y.2d 408, 416), the Legislature left it to the courts to give content to the word "safe". This long-standing practice is embodied in well-established rules of statutory construction and precedents of this and other courts.
It is a fundamental principle of our system of administering justice that the jury decides questions of fact while the Judge decides questions of law. It is equally basic that the construction of a statute is a question of law to be resolved by the court. (McKinney's Cons Laws of NY, Book 1, Statutes, § 77; 56 NY Jur, Statutes, § 106).[1] "[Q]uestions in regard to the interpretation, construction or effect of written documents are for the court alone, and for the judge to submit such questions to the jury is error. This rule applies to all written laws, constitutional provisions, statutes, etc." (Bush v Delaware, Lackawanna & Western R. R. Co., 166 N.Y. 210, 226.) It is too plain for argument that "[t]hough the terms used in a statute are technical or unusual, or are ambiguous, the judge should not leave their meaning to the jury." (McKinney's Cons Laws of NY, Book *223 1, Statutes, § 77 [emphasis supplied].) The cases adhering to this fundamental principle are legion.[2]
Thus, it would seem to me that it is for the court to give each word or phrase of a statute its appropriate meaning. In doing so, the court must look primarily to the intent of the Legislature. (McKinney's Cons Laws of NY, Book 1, Statutes, § 230.) As we recently stated, "the provisions [of a statute] must be interpreted as a whole, giving the words a meaning which serves rather than defeats the over-all legislative goals." (Matter of Allstate Ins. Co. v Shaw, 52 N.Y.2d 818, 820.) "It is fundamental that a statute must be read with the legislative goal in mind, so that controversies generated by ambiguities or gaps in the law may be resolved in accordance with the legislative scheme. (See 1 Kent Commentaries 462.)" (Matter of Pell v Coveney, 37 N.Y.2d 494, 496; see, also, Matter of Kelly v Sugarman, 12 N.Y.2d 298.) That the court, rather than a jury, should be the proper body to construe the meaning of words contained in a statute in accordance with the intent of the Legislature cannot be seriously disputed, for if the meaning of a word contained in a statute, such as the term "safe" as used in section 200 of the General Business Law, were to be decided on an ad hoc basis by a jury rather than the courts, the availability to hotels of the statutory limitation of liability would be subject to the vagaries of a body of lay individuals possessing no training or expertise in the task of discerning and applying legislative intent so as to effectuate the purposes and policies underlying the statute. The adoption of such a procedure will bring about widely divergent results which are in no way based on what the lawmakers intended to accomplish when they enacted the statute. Indeed, under the majority's view, a bank of safe-deposit boxes contained in a sheetrock room in a Buffalo hotel could be determined by a Buffalo jury to be a "safe" *224 within the meaning of the statute, thus limiting the hotel's liability to $500, while the identical facility installed by an Albany hotel might be found by an Albany jury not to be a "safe" within the meaning of the statute, in which case the unfortunate Albany hotel would not be afforded the protection of the statute and would be subject to unlimited liability for losing a guest's valuables, the value of which was never disclosed.
In my opinion, based upon the conceded purpose of the statute, such a result could not have been intended by the Legislature. Consequently, recognizing that legislative intent is the keystone to statutory construction, I believe it imperative that the court, not a jury, construe the term "safe" in such a way as to give a meaning to the term "which serves rather than defeats the over-all legislative goals." (Matter of Allstate Ins. Co. v Shaw, 52 N.Y.2d 818, 820, supra.) Until today, we have, almost without exception, zealously adhered to this rule. (See Matter of Mobil Oil Corp. v Finance Administrator of City of N. Y., 58 N.Y.2d 95 ["maintenance" does not include cleaning services within the meaning of subdivision 6 of section L46-1.0 of the Administrative Code of the City of New York]; Weinberg v D-M Rest. Corp., 53 N.Y.2d 499, 506 ["fee" as used in section 201 of the General Business Law does not include a tip]; Zaldin v Concord Hotel, 48 N.Y.2d 107 [hotel did not "provide" a safe within the meaning of section 200 of the General Business Law]; Matter of Smith [Great Amer. Ins. Co.], 29 N.Y.2d 116 [no "physical contact" between two vehicles within the meaning of section 617 of the Insurance Law]; MVAIC v Eisenberg, 18 N.Y.2d 1 [there was "physical contact" between two vehicles within the meaning of section 617 of the Insurance Law]; Matter of Kelly v Sugarman, 12 N.Y.2d 298, supra [31-year-old man with intelligence of a child was "crippled" within the meaning of subdivision 2 of section 16 of the Workers' Compensation Law].)
Certainly, in a common-law negligence action, the question of whether a person is crippled or whether there was physical contact between two vehicles or whether a hotel provided a safe could present factual questions calling for resolution by a jury. (See Akins v Glens Falls City School Dist., 53 N.Y.2d 325.) *225 A critical distinction, which the majority fails to perceive, must be drawn, however, where the Legislature has used such terms in a statute, in which case a purely legal question is presented, requiring the court, rather than a jury, to construe their meaning. Adopting a rule, as the majority does today, whereby a jury of lay persons is charged with the responsibility of giving content to statutory language, overrules well-established law without any justification for the change. Moreover, the new rule will destroy the confidence which lawmakers heretofore have had that the terms of their statutes will be construed and applied by the court in a uniform manner in accordance with the purposes sought to be achieved. Indeed, the wholly unacceptable result of the majority's holding will be that, as a practical matter, in every case where the plaintiff alleges that no "safe" was provided within the meaning of the statute, the question will have to be submitted to a jury.
The highest courts of three other States have addressed the same issue presented here and have unequivocally held that the question as to what constitutes a "safe", as that term was used in various statutes, is a question of law. In State v Stoner (473 SW2d 363 [Mo]), the Supreme Court of Missouri held that a coin receptacle in a pay phone is a "safe" within the meaning of a statute prohibiting possession of tools commonly used to break into safes. The court recognized that the content given such a term depended upon the intent of the Legislature in enacting the statute. Similarly, in Smith v Mine & Smelter Supply Co. (32 Utah 21, 25-26), the Utah Supreme Court held that whether or not a facility constituted a "vault or safe" within the meaning of a statute regulating the storage of explosives is a question of law. Finally, in a case on point with the instant case, the Ohio Supreme Court held that the trial court properly charged the jury that a bank of metal safe-deposit boxes constituted a "metal safe" as a matter of law. (Chase Rand Corp. v Pick Hotels Corp. of Youngstown, 167 Ohio St 299.)
It is abundantly clear, therefore, based on the aforementioned cases and long-established principles of statutory construction, that the question whether or not the *226 facility provided by defendant for the storage of its guests' valuables is a "safe", as that term is used in section 200 of the General Business Law, is a pure question of law to be decided by this court.
Turning to the case before us, I would hold that the subject facility is a "safe" within the meaning of the statute. In arriving at this conclusion, it is necessary to first consider "the context of the statute, the purpose and spirit of it, the surrounding circumstances, and  above all  the intention of the lawmakers." (McKinney's Cons Laws of NY, Book 1, Statutes, § 235, citing Mangam v City of Brooklyn, 98 N.Y. 585; People ex rel. Lichtenstein v Langan, 196 N.Y. 260; and People v City of Buffalo, 57 Hun 577.)
As previously stated, the principal purpose underlying the enactment of the statute before us was to protect hotels from undisclosed excessive liability by requiring guests who wished to have hotels safeguard property worth in excess of $500 to disclose the value of such property so that the hotel could take whatever steps necessary, based upon the value of the property, to assure its protection. (Millhiser v Beau Site Co., 251 N.Y. 290, supra.) The majority, however, appears to be of the view that the statute is primarily concerned with insuring the protection of guests' valuables. This misperception is apparent in the majority's assertion that (at p 217) "[a] large, luxury hotel has far different security needs than a small, low-priced motel catering to a different clientele. It would be inappropriate for this court, with its lack of expertise, to specify a single safe that must be used by all hotels and motels, not only because of their varying needs but also because of the flexibility that is left to the proprietor".
The Legislature, in sharp contrast to the majority's position, made it clear that the differences between various types of hotels catering to different clienteles were no longer relevant with respect to an innkeeper's liability. This was done by requiring all hotels desiring to avail themselves of the statutory limitation of liability to provide a safe. By limiting a hotel's liability to $500 per guest, it should be abundantly clear that the Legislature envisioned that hotels would provide a safe of a type that would be adequate to safeguard $500 worth of property. It would *227 be manifestly illogical to state, as one of the plaintiff's affiants did, that the Legislature intended to require a hotel, as a prerequisite to reliance on section 200, to install the same type of safes and vaults used by banks and other institutions that are responsible for safeguarding valuables worth millions of dollars merely to safeguard $500 worth of property. Indeed, the statute is designed to require guests to reveal the value of property they want the hotel to store so that the hotel can, if it chooses to by agreeing in writing, make arrangements elsewhere to provide the type of protection which may be unavailable at the hotel, but which is necessary to safeguard property worth significantly more than $500. Furthermore, the fact that some patrons frequenting a "large, luxury hotel" have different security needs than those patronizing "a small, low-priced motel" was precisely the reason why the Legislature enacted section 200. The type of safe provided is of secondary importance to the need of the hotel to be made aware of the value of such property. If value is undisclosed, the hotel is justified, under the express language of the statute, in assuming that the property so entrusted is worth $500 or less.[3] Consequently, if a "safe" which is adequate to protect $500 worth of valuables is provided, the limitation of liability provided by section 200 is available. As the Supreme Judicial Court of Maine cogently observed in construing a similar statute: "The hotelkeeper is not a banker; and he is not in the business of operating a safe deposit vault except as an incident to operating a hotel. It is not, therefore, unreasonable to restrict his liability for such incidental services rendered to his guests within such limits as will meet their ordinary needs. Those who carry with them large amounts of money or jewelry must take other measures for their protection. The added cost to the hotelkeeper of providing for such protection even as against the willful act or negligence of an employee, is in the last analysis one of his costs of operation reflected in the rates charged to all. Why should those *228 guests who do not need such protection pay for the cost of those who do?" (Levesque v Columbia Hotel, 141 Me 393, 398.)
While it would go too far to say that the Legislature cared nothing for the security of property belonging to the guests of a hotel, especially since the Legislature required that a safe be provided, it is imperative that the statute be construed in light of the fact that the primary concern of the lawmakers in enacting section 200 was to "protect the hotel from an undisclosed excessive liability". (Millhiser v Beau Site Co., 251 N.Y. 290, 294, supra; Zaldin v Concord Hotel, 48 N.Y.2d 107, 112, supra.)
In light of the conceded purpose of the statute, I believe that the facility provided by the defendant here clearly falls within the meaning of the term "safe" as it is used in section 200,[4] since it was more than sufficient to safeguard $500 worth of property per guest. This conclusion finds support in both the plain meaning of the term and the decisions in other jurisdictions that have addressed the issue.
To assist a court in properly construing a term contained in a statute, resort may be had to definitions provided by lexicographers. (Quotron Systems v Gallman, 39 N.Y.2d 428; McKinney's Cons Laws of NY, Book 1, Statutes, § 234.) Black's Law Dictionary defines a safe as "[a] metal receptacle for the preservation of valuables." (Black's Law Dictionary [5th ed], p 1199.) The identical definition is given in Bouvier's Law Dictionary and in Words and Phrases (38 Words & Phrases, "Safe", 1982 Cum Ann Pocket Part, citing Buntin v State, 117 Ga App 813). Webster's Dictionary defines a safe as "a place or receptacle to keep articles (as provisions or valuables) safe." (Webster's Seventh New Collegiate Dictionary, p 757.) Finally, the term "safe" is defined once again in Words and Phrases as, inter alia, "a receptacle in which valuables are placed to complete their safety." (38 Words & Phrases, *229 "Safe", p 9, citing Columbia Cas. Co. v Rogers Co., 157 Ga 158, 160-161.) The individually locked metal safety-deposit boxes, enclosed in a sheetrock room, which were provided by defendant, fall within all of these commonly accepted definitions of the term "safe".
In addition to the afore-mentioned definitions and the intent of the Legislature to protect hotels from excessive undisclosed liability, our holding finds further support in the decisions of at least two other States that have addressed the issue. A Federal District Court in Michigan held that a defendant hotel provided a "metal safe or a suitable vault" within the meaning of a Michigan statute similar to New York's where it had made available safety-deposit boxes which contained a locking apparatus that could be released only upon the simultaneous application of two keys, one of which was held by the guest while the other was in the possession of the hotel. (Oppenheimer v Morton Hotel Corp., 210 F Supp 609, affd 324 F.2d 766.) The court reasoned that since these boxes were similar to the kind employed in banks, they constituted a "safe" within the contemplation of the statute. The defendant in this case provided an identical facility.
In a similar case, Chase Rand Corp. v Pick Hotels Corp. of Youngstown (167 Ohio St 299, 305, supra), which the Oppenheimer court relied on, the Ohio Supreme Court held that "as a matter of law the bank of metal safe deposit boxes constituted `a metal safe,' and that such boxes complied with [the Ohio statute]."
There can be little doubt that the defendant's safe-deposit box facility was a "safe" as that term is commonly defined, as it has been construed by other courts and, most especially, as the New York Legislature intended it to be construed. Nor is it insignificant that in the century and a quarter that this statute has been on the books, there is nothing in the reported cases to suggest, until now, that the availability of the statutory protection might turn on the type of "safe" provided by the innkeeper.
Finally, some mention should be made as to the enforceability of the agreements signed by plaintiffs limiting the hotel's liability to $500. I agree that the agreements signed by the parties purporting to limit the hotel's liability *230 to $500 do not operate to achieve any such limitation of liability in the cases before us, but I reach this conclusion for quite different reasons than does the majority. I cannot agree that the agreements were unenforceable for lack of consideration. The promise of the hotels to provide safe-keeping facilities would support their guests' promises to limit the liability of the hotels. (See 1 Corbin, Contracts, § 136, p 579; Restatement, Contracts 2d, § 74.) To suggest that the promise of the hotels could not serve as consideration because it merely restated their statutory obligation is incorrect. Section 200 imposes no obligation on a hotel to provide a safe for storage of valuables; the statute merely conditions the limitation of the hotels' liability to $500 on the provision of such a safe.
These agreements, however, would not serve to limit the liability of the hotels in the circumstances of these cases. As contracts of exoneration, rather than of indemnity, they would not serve to exculpate the hotels for liability for their own negligence in the absence of an explicit reference to exoneration for such liability. (Gross v Sweet, 49 N.Y.2d 102.)
For the reasons stated, I would hold that defendant's liability is limited to $500 and affirm the order of the Appellate Division awarding both plaintiffs said sum.
Order modified, with costs to plaintiffs, in accordance with the opinion herein and, as so modified, affirmed.
NOTES
[1] The full text of the agreement reads as follows: "IN CONSIDERATION of the privilege herewith granted me by MAYFAIR HOUSE whereby I am allowed the sole use of an individual safe deposit box for the keeping of my valuables and whereby I am given possession of the sole key of said box during the period of my use thereof, I hereby agree that the liability of MAYFAIR HOUSE for loss or damage to the contents, at any time, of such safe deposit box, by theft, burglary, or otherwise, is and shall be limited at all times to a total amount of $500, and, for the purpose of determining any liability of MAYFAIR HOUSE for any such loss or damage to the contents of such safe deposit box, I hereby agree that the value of the contents of said box shall never exceed at any one time the sum of $500. I further agree to use this safe deposit box only for my personal property and that of my immediate family and for such a period only as I may occupy an apartment in MAYFAIR HOUSE. As the only key to said box is herewith delivered to me, I hereby release MAYFAIR HOUSE from any liability whatever arising from the loss of this key or the presentation thereof by a person other than myself. Should the key be lost, I authorize MAYFAIR HOUSE to have the box forcibly or otherwise opened at my expense and I agree to be present or have a duly authorized representative present when requested. It is understood that access to the box is to be allowed to me only upon my signature and upon my giving up the use of the box, I agree to return the key to MAYFAIR HOUSE and to execute the release or receipt hereto annexed."
[2] It is worth noting, however, that the term "safe" has long enjoyed a similar definition. Thus, the 1940 edition of Bouvier's Law Dictionary defines the word as follows: "A place for keeping things in safety. Specifically, a strong and fireproof receptacle (as a movable chest of steel, etc., or a closet or vault of brickwork) for containing money, valuable papers, or the like." A similar definition is employed in the 1900 edition of Webster's American Dictionary of the American Language.
[3] Nor are the cases cited from other jurisdictions persuasive. In State v Stoner (473 SW2d 363 [Mo]), the court held that a pay telephone's coin collection box was a "safe" for the purposes of a broad statute prohibiting the possession of burglar tools for breaking into railroad cars, boats, houses, stores, or the "door, shutter or window of a building of any kind" as well as safes. The Missouri court was not concerned with whether the receptacle was adequate to protect jewelry and papers. In Smith v Mine & Smelter Supply Co. (32 Utah 21), the court did not hold "that whether or not a facility constituted a `vault or safe' within the meaning of a statute regulating the storage of explosives is a question of law." (Dissenting opn, at p 225.) Rather, the Utah Supreme Court declared that a brick room with an unobstructed opening leaving powder caps exposed to other explosives, was not "a vault or safe such as was clearly contemplated by the ordinances." (32 Utah, at p 26.) As indicated by the court's reference to uncontroverted testimony (id., at p 25), the court was simply determining the factual question as a matter of law. Finally, that an Ohio court in another situation found a particular facility to be a "safe" within the meaning of another statute (see Chase Rand Corp. v Pick Hotels Corp. of Youngstown, 167 Ohio St 299) does not compel this court to do so now.
[4] Plaintiffs contend that the agreements are consumer contracts that are neither legible nor printed in adequately sized typeface, and so are not admissible into evidence by virtue of CPLR 4544. The record includes an affidavit by a printer establishing that the type is of an adequate size and a review of the forms reveals their legibility. The agreements are not barred from being entered into evidence on this ground.
[1] (See, also, Matter of Sigety v Hynes, 38 N.Y.2d 260, cert den 425 US 974; Rankin v Shanker, 23 N.Y.2d 111; State v Union Tank Car Co., 281 Ala 246; Bodinson Mfg. Co. v California Employment Comm., 17 Cal 2d 321; United Presbyt. Assn. v Board of County Comrs. of County of Jefferson, 167 Col 485; Pascale v Board of Zoning Appeals of City of New Haven, 150 Conn 113; Lime-Cola Bottling Co. v Atlanta & West Point R. R. Co., 34 Ga App 103; Barnett v Reed, 93 Idaho 319; Howes v Nathan, 15 Ill App 2d 48; Miller Oil Co. v Abrahamson, 252 Iowa 1058; Smith v Wilson, 269 SW2d 255 [Ky]; Emery v Asher, Jr. & Sons, 196 Md 1; Aikens v Department of Conservation, 387 Mich 495; Sobrio v Cafferata, 72 Nev 145; State ex rel. Department of Health v City of Hoboken, 130 NJ Eq 564; Booze v District Ct. of Lincoln County, 365 P2d 589 [Okla]; Crouch v Craik, 369 SW2d 311 [Tex]; State ex rel. Humiston v Meyers, 61 Wn 2d 772.)
[2] (See Armstrong Co. v Nu-Enamel Corp., 305 US 315; Watkins v National Elec. Prods. Corp., 165 F.2d 980; Smith v Hobart Mfg. Co., 194 F Supp 530, revd on other grounds 302 F.2d 570; Salinas v Kahn, 2 Ariz App 181, mod on other grounds reh den 2 Ariz App 348; Seybert v Imperial County, 162 Cal App 2d 209; Crosby Aeromarine v Hyde, 115 Ga App 836; Howes v Nathan, 15 Ill App 2d 48; Tillotson v Abbott, 205 Kan 706; Falcone v Palmer Ford, 242 Md 487; Schroeder v O'Neill, 166 SC 515; Henrie v Rocky Mountain Packing Corp., 113 Utah 444; Breiby v Department of Admin., 55 Wis 2d 16.)
[3] This is all the more so in a case such as this where both plaintiffs signed an agreement that they would not deposit more than $500 worth of property in their safety-deposit boxes and that they would not hold the defendant liable for more than $500 in the event their property was lost or stolen.
[4] The record reveals that defendant provided individually locked metal safety-deposit boxes for the use of its guests. The guest and the hotel each held a key to the guest's box. The safety-deposit boxes were housed in a separate room with sheetrock walls. Access to the room could be had only by passing through two-inch thick wooden doors, at least one of which was secured by an iron tumbler-type lock.